Celeste JAMES, Barry James, Plaintiffs–Appellees,

v.

CITY OF DOUGLAS, GA., Defendant,

Clyde Purvis, John Doe—Clifford Thomas, Defendants–Appellants.

No. 90–8353.

United States Court of Appeals, Eleventh Circuit.

Sept. 18, 1991.

David H. Connolly, Jr., James L. Elliott, Painter Ratterree Connolly & Bart, Savannah, Ga., for Thomas.

Roy E. Paul, Frank W. Seiler, Savannah, Ga., for City of Douglas.

Amanda F. Williams, Martha F. Dekle, Brunswick, Ga., for Celeste and Barry James.

Before JOHNSON and COX, Circuit Judges, and GODBOLD, Senior Circuit Judge.

PER CURIAM:

Celeste James filed this action against the City of Douglas, Georgia, and two of its police officers, Clyde Purvis and Clifford Thomas, alleging a 42 U.S.C. § 1983 claim and various pendent state law claims stemming from the viewing of a videotape of Ms. James and George Lee engaged in explicit sexual activity. Both Purvis and Thomas moved for summary judgment based on the doctrine of qualified immunity. The district court denied the motion, concluding that James's complaint alleged facts sufficient to amount to a violation of her clearly established constitutional right to privacy. Purvis and Thomas appeal the denial of summary judgment. We affirm.

## I. FACTS AND PROCEDURAL HISTORY [1]

Celeste James and George Lee owned and operated a floral and bridal store in Douglas, Georgia. In February 1988, the store was destroyed by fire. The Douglas Police Department suspected that the fire was intentionally started in order to collect insurance proceeds. During the ensuing investigation, Claude Jones, then a captain in the Detective Division of the Douglas Police Department, was told by James that Lee was attempting to extort her portion of the insurance proceeds. She reported that Lee threatened to show James's family a videotape of James and Lee engaged in sexual activity unless James gave him her share of the insurance money. Lee videotaped this activity without the knowledge or consent of James. James told Captain Jones that she was unwilling to cooperate in the investigation and prosecution of Lee

---

1. In determining whether a complaint alleges a violation of a clearly established right, we must accept the allegations contained in the plaintiff's complaint as true. *See Stewart v. Baldwin*

*County Bd. of Educ.*, 908 F.2d 1499, 1504 (11th Cir.1990). Except where we indicate otherwise, we relate James's version of the facts.

because of the embarrassing nature of the tape. Jones assured James that if she cooperated the police would handle the tape discreetly.

James assisted the police in their investigation; and in March 1988, the Douglas police arrested Lee. The police searched Lee's home and seized several videotapes, including the tape which depicted James and Lee engaging in sexual activity. All the police officers involved in the search of Lee's home viewed the tape on Lee's videotape player. The tape was then given to Jones but never logged-in as evidence. Instead, Jones kept the tape in his desk drawer. Later, on the same night as the search, Clifford Thomas, a detective in the Douglas Police Department, viewed the tape. Thomas contends that he viewed the tape at the request of Jones, but Jones denies making this request.

On the day after the search of Lee's home, other individuals watched the tape in the police station's briefing room. This group included Clyde Purvis, Chief of the Douglas Police Department, Assistant Chief John Sweat, Sheriff Paul Hutcheson and Chief Sheriff's Deputy Joe White. According to Purvis, Sheriff Hutcheson was there because the tape was seized in the Sheriff's jurisdiction, and Deputy White was there to operate the tape player. After viewing the tape, Purvis returned it to Jones.

In June 1988, Jones was terminated from the Douglas Police Department. In removing his belongings from his desk, he noticed that the copy of the tape then in his desk was not the copy he seized in March. Jones turned the tape over to Purvis, who maintained possession of it until this suit was filed.

In the months following Lee's arrest, James began to hear stories of numerous individuals viewing the tape. James confronted Jones with these allegations. Jones admitted to James that he knew several individuals had viewed the tape and that he believed several others had also viewed the tape.

In February 1989, James filed this action against the City of Douglas, Chief Clyde Purvis, and Clifford Thomas.[2] The complaint alleges a claim under 42 U.S.C. § 1983, for violations of James's rights under the Fourteenth Amendment.[3] The complaint also alleges various pendent state law claims. Purvis and Thomas moved for summary judgment,[4] asserting that they are entitled to qualified immunity on the section 1983 claim and that James's complaint failed to state a claim upon which relief can be granted on the state law claims. The district court granted in part and denied in part their motion. The court reasoned that Purvis and Thomas were not entitled to qualified immunity because James's complaint alleges a violation of a clearly established right and she has produced sufficient evidence to create a genuine issue of material fact regarding whether Purvis and Thomas actually engaged in conduct that violated this right. The court concluded that James's complaint alleges a violation of the confidentiality branch of the right to privacy under the Constitution. On the state law claims, the court granted summary judgment for the city but denied the requests of Purvis and Thomas for summary judgment.[5] Purvis and Thomas appeal only the denial of summary judgment on the section 1983 claim.

## II. ISSUES ON APPEAL

This court, *sua sponte*, raised the issue of whether we had jurisdiction to hear this appeal involving the denial of qualified immunity where there are additional claims

---

2. James's complaint originally named the City of Douglas, Clyde Purvis and John Doe as defendants. James filed an amended complaint adding Clifford Thomas as a defendant.

3. The complaint also alleged a violation of both the Fourth and Fifth Amendments but the district court concluded that James did not have a cause of action under either of these amend-

ments. The district court's determination of these issues is not before us on this appeal.

4. The city also moved for summary judgment.

5. The court granted summary judgment for all defendants on James's claim of intentional infliction of emotional distress.

that would proceed to trial regardless of the outcome of the appeal.

Purvis and Thomas appeal the denial of qualified immunity, asserting that they did not violate a clearly established constitutional right.

## III. DISCUSSION

### A. Jurisdiction

■ After this case was briefed and oral argument heard, the *en banc* court, in *Green v. Brantley*, 941 F.2d 1146 (11th Cir.1991) (*en banc*), decided the precise jurisdictional issue present in this case. In *Green*, the *en banc* court held "that the denial of summary judgment based upon qualified immunity is appealable as a collateral order under *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), even if an additional damage claim will proceed to trial regardless of the outcome of the appeal." *Green*, at 1148. We conclude that we have jurisdiction to hear this appeal.

### B. Qualified Immunity

Purvis and Thomas appeal the district court's denial of summary judgment based upon the doctrine of qualified immunity. The court concluded that James's complaint alleges a violation of a clearly established constitutional right, the right to privacy, and that James had produced sufficient evidence to create a genuine issue of material fact regarding whether Purvis and Thomas actually engaged in conduct that violated this clearly established right. The court, therefore, held that Purvis and Thomas were not entitled to qualified immunity. Purvis and Thomas assert that the district court erred in concluding that James's complaint alleges a violation of a clearly established constitutional right.

■ An appellate court reviews the denial of summary judgment involving qualified immunity *de novo*. *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir.1988). In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court created the standard to deter-

mine whether a public official can assert the defense of qualified immunity: "[G]overnmental officials ... generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738.

In *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Supreme Court clarified the standard by concluding that qualified immunity "turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time [the action] was taken." *Id.* at 639, 107 S.Ct. at 3038 (citations omitted). The Court further stated that

[i]t should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in light of preexisting law the unlawfulness must be apparent.

*Id.* at 640, 107 S.Ct. at 3039 (citations omitted).

■ "An official will be immune from liability if the applicable law was unclear or if a reasonable officer could have believed that his actions were lawful in light of the clearly established law and the information possessed by the officer." *Stewart v. Baldwin County Bd. of Educ.*, 908 F.2d 1499, 1504 (11th Cir.1990). A right is clearly established if, in light of the preexisting law, the unlawfulness of the conduct is apparent to the reasonable official. *See id.* In this case, we are required to determine whether, under James's version of the facts, Purvis and Thomas reasonably could have believed that allowing these other individuals to view the tape was lawful in light of existing law.

■ The district court concluded that James's complaint alleges a violation of the confidentiality branch of the constitutional right to privacy. Although the constitutional right to privacy has vague contours and has been in a state of flux in recent years, *see, e.g., Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), we conclude that a reasonable official in Purvis's and Thomas's position would realize the apparent unlawfulness of his action.

In *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), the Supreme Court concluded that "[t]he cases sometimes characterized as protecting 'privacy' have in fact involved at least two kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Id.* at 598–600, 97 S.Ct. at 876–77 (footnotes omitted). The Supreme Court again recognized an individual's privacy interest in avoiding disclosure of personal matters in *Nixon v. Administrator of Gen. Servs.,* 433 U.S. 425, 457–59, 97 S.Ct. 2777, 2795–96, 53 L.Ed.2d 867 (1977).[6]

This court's predecessor, in a series of cases decided after *Whalen,* began to flesh out the parameters of the individual's interest in avoiding disclosure of personal matters. *See Fadjo v. Coon,* 633 F.2d 1172 (5th Cir. Unit B 1981);[7] *Duplantier v. United States,* 606 F.2d 654, 669–71 (5th Cir.1979); *Plante v. Gonzalez,* 575 F.2d 1119, 1132 (5th Cir.1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979). The court described this privacy interest as the "right to confidentiality." *Plante,* 575 F.2d at 1132.

The most important in this series of cases for our purposes is *Fadjo.* In *Fadjo,* the plaintiff had been subpoenaed by Michael Coon, an assistant State Attorney for Florida's Eleventh Judicial Circuit, to testify and produce various documents relating to the disappearance of Kenneth S. Rawdin. Fadjo alleged that he was required to provide information dealing with "the most private details of his life." He provided this information only after Coon assured him that the information would not be revealed to anyone.

Fadjo's complaint alleged that the information, however, was revealed. Fadjo maintained that Coon allowed William Julson, a private investigator, to examine his testimony. Julson in turn reported the contents of Fadjo's testimony to several insurance companies that issued life insurance policies on Rawdin's life that named Fadjo as the beneficiary.

Fadjo filed a claim under 42 U.S.C. § 1983 alleging that the State of Florida, along with Julson and the insurance companies, conspired to abridge his constitutional rights to privacy and freedom of speech by revealing this highly personal information. The district court dismissed Fadjo's complaint for lack of subject-matter jurisdiction because the court found that the complaint failed to present a substantial federal question. On appeal, the court of appeals addressed whether Fadjo's complaint alleged a violation of a right secured by the Constitution.

The court concluded that the complaint alleged a violation of a federal constitutional right.[8] The court said that recent decisions of the Supreme Court and of the former Fifth Circuit had established the constitutional right to privacy, which consists of two strands: the individual's interest in avoiding disclosure of personal matters and the interest in independence in making important decisions. The court

---

**6.** In both *Whalen* and *Nixon,* the Supreme Court concluded that the disclosure, when balanced against the state's interest, did not violate the right to privacy.

**7.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**8.** Implicit in the opinion in *Fadjo* is the recognition of the Supreme Court's holding in *Whalen* that the Fourteenth Amendment includes a constitutional right to privacy. *See Whalen v. Roe,* 429 U.S. 589, 598 n. 23, 97 S.Ct. 869, 876 n. 23, 51 L.Ed.2d 64 (1977).

went on to conclude that Fadjo's complaint "clearly states a claim under the confidentiality branch of the privacy right." *Fadjo,* 633 F.2d at 1175. "[E]ven if the information was properly obtained, the state may have invaded Fadjo's privacy in revealing it to Julson and the insurance companies" because "[i]mplicit in ... the complaint is the allegation that no legitimate state purpose existed sufficient to outweigh the invasion into Fadjo's privacy." *Id.* (footnote omitted).

According to the court, *Fadjo* "involves the revelation of intimate information obtained under a pledge of confidentiality...." *Id.* at 1176. The opinion in *Fadjo* establishes the rule that a state official may not disclose intimate personal information obtained under a pledge of confidentiality unless the government demonstrates a legitimate state interest in disclosure which is found to outweigh the threat to the individual's privacy interest.

We now turn to the substantive issue involved in this case: whether James's complaint alleges a violation of a clearly established constitutional right. James alleges that Purvis and Thomas violated her right to privacy by viewing the videotape and allowing other individuals to view it.[9] She asserts that Purvis, Thomas and other individuals did not have a legitimate police purpose for viewing the tape but viewed the tape for their own personal gratification.

These allegations are remarkably similar to the allegations made by Fadjo in his complaint. The Supreme Court has stated that to be clearly established the very action in question need not have previously been held unlawful. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The corollary to this principle is that if the action has previously been held to violate a constitutional right, then the constitutional right must be clearly established. The court in *Fadjo,* seven years before the conduct at issue in this case, held that if the

allegations contained in Fadjo's complaint were true it would amount to a constitutional violation. Therefore, *Fadjo* clearly established the constitutional right James alleges was violated by Purvis and Thomas.

Purvis and Thomas argue that *Fadjo* is distinguishable because it involved disclosure to the general public and in this case only police officers viewed the tape. This argument misses the point. The inquiry is whether there is a legitimate state interest in disclosure that outweighs the threat to the plaintiff's privacy interest. The answer to that inquiry does not depend upon whether the person to whom disclosure was made is a state official or a member of the general public.

## IV. CONCLUSION

We conclude that James's complaint alleges a violation of a clearly established constitutional right. We affirm the district court's denial of the motion for summary judgment.

AFFIRMED.

---

**9.** James clearly alleges that both Purvis and Thomas not only viewed the tape but allowed other individuals to view it for no proper purpose. We do not decide whether the viewing of the tape by Purvis or Thomas would violate a clearly established constitutional right.