United States Court of Appeals,

Fifth Circuit.

No. 92-3781.

Dino CINEL, Plaintiff-Appellant,

v.

Harry F. CONNICK, Individually and as District Attorney for the
Parish of Orleans, State of Louisiana, et al., Defendants-
Appellees.

March 11, 1994.

Appeals from the United States District Court for the Eastern
District of Louisiana.

Before DUHÉ and EMILIO M. GARZA, Circuit Judges and STAGG[1],
District Judge.

DUHÉ, Circuit Judge.

Appellant, Dino Cinel, appeals from the district court's grant

of Appellees' motions to dismiss under Federal Rule of Civil

Procedure 12(b)(6).  We modify and affirm.

Appellant sued numerous state actors and private persons,

contending that they conspired together over a period of years to

deprive him of his civil rights by making public certain allegedly

confidential information gathered during a criminal investigation

of him.  He also asserts state law claims for negligence, state

constitutional violations, and invasion of his privacy.

BACKGROUND

In 1988 Dino Cinel was a Roman Catholic priest at St. Rita's

---

[1]District Judge of the Western District of Louisiana,
sitting by designation.

Catholic Church in New Orleans, Louisiana.  While Cinel was away, another priest at the rectory where Cinel lived, accidentally discovered a variety of sexually oriented materials in Cinel's room including a homemade video tape of Cinel engaged in homosexual activity, primarily with two young men, Christopher Fontaine and Ronald Tichenor.  Church officials turned the materials over to the Orleans Parish District Attorney's Office.  Cinel alleges that in exchange for transactional immunity and under a confidentiality agreement, he provided the names and addresses of the other men depicted in the film to the DA's office.  Upon verifying that they were consenting adults at the time of their sexual involvement with Cinel, the DA's office decided not to prosecute Cinel.

Cinel further alleges that George Tolar, while an investigator for the DA's office, during the investigation gave the names and addresses of Fontaine and Tichenor, and certain unidentified documents in the DA's file, to Gary Raymond.  Raymond was a private investigator working for two lawyers, David Paddison and Darryl Tschirn.  Cinel contends that Raymond used the information given him by Tolar to solicit the two men as clients for the attorneys.  One of the men, Fontaine, represented by Paddison and Tschirn, then sued Cinel and the Church in state court in 1989.  The other, Tichenor, represented by the same counsel, sued Cinel in 1991.

In 1990, in connection with the Fontaine state civil suit, the state court, at the request of the Church, issued a subpoena duces tecum directing the DA's office to release the materials found in

Cinel's room to the litigants in the Fontaine suit. Pursuant to a consent judgment drafted in response to the subpoena, by an assistant district attorney, Raymond Bigelow, the DA's office released the materials to Paddison and Tschirn as custodians, and Raymond was authorized to make copies of the materials "upon the request of any party to this [the Fontaine] litigation." Cinel alleges in his complaint that the allegedly confidential materials were released "under the pretext of a subpoena and consent judgment." However no facts support that conclusion.

Cinel also alleges that a year later Raymond gave copies of the materials to Richard Angelico, a local television investigative reporter, and that Angelico and his employer, WDSU Television, Inc., broadcast excerpts of the materials. Cinel also contends that in February 1992, Raymond sold some of the materials to Geraldo Rivera and his employer, Tribune Entertainment Company, which broadcast excerpts of the material on the national syndicated television program "Now It Can Be Told." Cinel brought § 1983 claims, together with pendent state law claims, against Harry Connick, the district attorney, Raymond Bigelow, and George Tolar in their individual and official capacities. He also sued Gary Raymond, David Paddison, Darryl Tschirn, Richard Angelico, WDSU Television Inc.,[2] Geraldo Rivera, and Tribune Entertainment. After the filing of several motions, the district court granted

_____

[2]WDSU Television, Inc. was substituted for Pulitzer Broadcasting Co. as a defendant.

Appellees' motions to dismiss under Federal Rules of Civil Procedure 12(b)(6). Cinel appeals.

DISCUSSION

## I. *Standard of Review*

We review a Rule 12(b)(6) dismissal de novo. We must accept all well-pleaded facts as true, and we view them in the light most favorable to the plaintiff. We may not look beyond the pleadings. A dismissal will not be affirmed if the allegations support relief on any possible theory. *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir.1992).

## II. *Ripeness: Transactional Immunity and Fair Trial*

Although none of the parties raise the issue of ripeness on appeal, we can address lack of subject matter jurisdiction sua sponte. *MCG, Inc. v. Great Western Energy Corp.,* 896 F.2d 170 (5th Cir.1990). Appellant alleges that the DA's office violated his state and federal constitutional rights to due process by breaching a transactional immunity agreement. He also claims that Appellees violated his state and federal constitutional rights to a fair trial by releasing allegedly confidential materials to the public. These claims must be dismissed as premature. For an issue to be ripe for adjudication, a plaintiff must show that he "will sustain immediate injury" and "that such injury would be redressed by the relief requested." *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 81, 98 S.Ct. 2620, 2635, 57 L.Ed.2d 595

4

(1978).  Both the criminal and civil proceedings are still pending in state court.  The existence of prejudice cannot be demonstrated at this time, and any damages would be purely speculative.  *See, e.g., Powers v. Coe,* 728 F.2d 97, 102 (2d Cir.1984) (noting that a fair trial § 1983 claim may be "unripe" if brought prior to an impending trial);  *Kaylor v. Fields,* 661 F.2d 1177, 1181 (8th Cir.1981) (explaining that a claim that one was deprived of an impartial jury because of releases to the press is not ripe when no criminal trial has taken place).  Because we dismiss these claims for lack of subject matter jurisdiction, the district court's decision must be modified to reflect a dismissal without prejudice on these two issues.  *See Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188-89 (5th Cir.1986).

III. *Standard for Pleading a § 1983 Case*

The district court applied this Circuit's heightened pleading requirement for § 1983 cases established in *Elliott v. Perez,* 751 F.2d 1472, 1479 (5th Cir.1985), in evaluating the sufficiency of the allegations of Appellant's complaint.  This standard was appropriate when the district court rendered its Order and Reasons on August 14, 1992.  Subsequently, in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* --- U.S. ----, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court overruled our precedent at least insofar as determinations on the merits under 12(b)(6) are concerned.

5

Appellant contends that as a result of the Supreme Court's decision in *Leatherman,* the district court must be reversed. By contrast, some of the Appellees contend that the heightened pleading requirement remains viable as to claims against them. Others contend that under the lesser pleading requirements applicable following *Leatherman,* the complaint as to them remains insufficient. We need not resolve the precise scope of *Leatherman* for, following our detailed de novo review of the complaint, we agree that under either standard the pleadings are deficient to resist Appellees' motions under Rule 12(b)(6). There is no relief to which Appellant is entitled based upon the allegations he has made.

IV. *Section 1983 Claims:  Privacy and Due Process*

Appellant asserts claims against all Appellees under 42 U.S.C. § 1983 for a violation of his rights to privacy and due process.[3] To state a cause of action under § 1983, Appellant must allege that some person, acting under state or territorial law, has deprived him of a federal right. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381, 387 (5th Cir.1985), *cert. denied,* 488 U.S. 848, 109 S.Ct. 129, 102 L.Ed.2d 102 (1988).

---

[3]Appellant alludes for the first time in his appellate brief that he has a claim under the Equal Protection Clause. Appellant does not elaborate on this claim in his brief, and allegations in his complaint do not support any claim of discrimination. Thus, we will not consider this claim.

A. Deprived of a Federal Right.

Appellant relies on *Fadjo v. Coon,* 633 F.2d 1172 (5th Cir.1981), and *James v. City of Douglas,* 941 F.2d 1539 (11th Cir.1991), to argue that Appellees deprived him of his constitutional right to privacy by violating an agreement to keep the identity and whereabouts of Tichenor and Fontaine confidential. In *Fadjo,* the plaintiff alleged that in violation of a pledge of confidentiality, a state attorney investigator revealed to private parties intimate information about the plaintiff obtained during a criminal investigation.[4] 633 F.2d at 1174. The court explained that when the privacy right is invoked to protect confidentiality, there is no violation if a legitimate state interest outweighs the plaintiff's privacy interest. *Id.* at 1176. Based on the face of the complaint, the court in *Fadjo* concluded that the allegations were sufficient to raise a claim under § 1983 for a violation of the plaintiff's constitutional right of privacy and that no legitimate state interest capable of outweighing the plaintiff's privacy right existed. *Id.* at 1175.

In contrast to the allegations in *Fadjo* and *James,* Appellant's

---

[4]Likewise, in *James,* the plaintiff brought a civil rights action against the city and police officers alleging that the officers violated a confidentiality agreement by allowing others to view a tape showing her and another engaged in sexual activity. 941 F.2d at 1540-51. The Eleventh Circuit held that the plaintiff alleged a violation of a clearly established constitutional right, and thus, the officers were not entitled to a qualified immunity. *Id.* at 1544.

allegations involving Tolar's release to Raymond of the names and addresses of the men depicted in the video do not implicate any constitutional privacy interests. The release of this information alone does not involve intimate details of Appellant's life. Thus, these facts alleged by Appellant are insufficient to state a claim for a deprivation of his constitutional right of privacy.

Appellant also fails to state a claim for relief against Tolar, Bigelow, and Connick in their individual and official capacities for the release of the sexually oriented materials found in Cinel's room to the private litigants, the Church and Fontaine, pursuant to a subpoena. Because the Church had viewed the materials before giving them to the DA's office, and Fontaine had participated in making the video, the information disclosed was not private as to these parties. In other words, Appellant cannot claim that his privacy has been invaded when allegedly private materials have been disclosed to those who already know the details of that material. Nonetheless, assuming that Appellant had a privacy interest in some of the materials requested by the subpoena, the government officials had a legitimate interest in complying with a validly issued subpoena.[5] Moreover, the

---

[5]Appellant argues that the materials were unlawfully obtained through the subpoena because the state actors violated Louisiana Revised Statute § 15:41. We do not have to accept as true Appellant's conclusory allegations. *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). Section 15:41 applies to the disposition of

government officials drafted the consent judgment to ensure that Appellant's rights were protected by allowing the material to be copied only for the civil litigants.[6]

Appellant fails to state a claim that the state actors denied him his procedural due process rights by not notifying him of the subpoena duces tecum. Appellant has submitted no legal authority to this Court, and we have found none in our independent research, that creates an affirmative duty of a non-party or a governmental official in possession of documents to notify the owner of the subpoenaed documents. That Appellant may be the legal owner of the documents is irrelevant to the issuance of a valid subpoena duces tecum; a subpoena may order a person to produce documents in his or her possession. *See* La.Code Civ.Proc. art. 1354 (West 1984).

Finally, Appellant does not have any claim under the Due Process Clause for damage to his reputation against any Appellees as a result of the publication of the materials. The Supreme Court held in *Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 1165, 47

---

"seized" materials. Because the materials taken from Appellant's room were voluntarily given to the DA's office, we conclude they were not "seized" by the State for the purposes of section 15:41. None of the facts Cinel alleges leads us to believe that the subpoena was issued illegally.

[6]In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record. *See Louisiana ex rel. Guste v. United States,* 656 F.Supp. 1310, 1314 n. 6 (W.D.La.1986), *aff'd,* 832 F.2d 935 (5th Cir.1987), *cert. denied,* 485 U.S. 1033, 108 S.Ct. 1592, 99 L.Ed.2d 907 (1988). Accordingly, the consideration of the consent judgment does not convert this motion into one for summary judgment.

L.Ed.2d 405 (1976), that an interest in reputation alone does not implicate a "liberty" or "property" interest sufficient to invoke due process protection. *See also Thomas v. Kippermann,* 846 F.2d 1009, 1010 (5th Cir.1988).

B. Under Color of Law

The remainder of Appellant's § 1983 claims involve an alleged conspiracy between the state and private actors to publish allegedly privileged information from the DA's file and the sexually oriented materials released under the pretext of a civil subpoena. A private party may be held liable under § 1983 if he or she is a "willful participant in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970); *Auster Oil,* 764 F.2d at 387. To support his conspiracy claims, Appellant must allege facts that suggest: 1) an agreement between the private and public defendants to commit an illegal act, *Arsenaux v. Roberts,* 726 F.2d 1022, 1024 (5th Cir.1982), and 2) an actual deprivation of constitutional rights, *Villanueva v. McInnis,* 723 F.2d 414, 418 (5th Cir.1984).

Appellant has failed to allege facts that suggest that Tolar's release of information from the DA's file to Raymond rises to the level of a conspiracy to deprive Appellant of his constitutional rights. Appellant contends that Tolar released the information "for the purpose of aiding and abetting [Raymond, Paddison, and

Tschirn] and prejudicing Cinel in the civil litigation." Complaint ¶ 44(b). Appellant avers that Raymond, Paddison, and Tschirn used the information "to solicit and procure Fontaine and Tichenor as clients in violation of Rule 7.3 of the Louisiana Rules of Professional Conduct." Complaint ¶ 44(c). Perhaps, as Appellant alleges, this was improper client solicitation; however, nothing in his complaint implies or states that these Appellees agreed to undertake a scheme to deprive Appellant of his constitutional rights. A lapse of ethics by the Appellees is insufficient by itself to rise to the level of a conspiracy to deprive Appellant of his federal constitutional or statutory rights. Moreover, the subsequent allegation that Angelico and WDSU published the documents cannot be linked back to a state actor. Nothing in Appellant's complaint intimates that Tolar's intention in releasing the information to Raymond was to make it available for future publication.

Likewise, Appellant has failed to aver facts that suggest an agreement between the state actors and the private actors to publish the materials released pursuant to the subpoena. The publication of the material by some of the private parties, more than a year after the issuance of the subpoena, is too attenuated from the initial state action to support an agreement among the parties. *See Tosh v. Buddies Supermarkets, Inc.,* 482 F.2d 329, 331 (5th Cir.1973). Appellant, himself, alleges in his complaint that

11

the material released by Raymond to private parties was in contempt of the consent judgment. *Cf. Hoai v. Vo,* 935 F.2d 308, 314 (D.C.Cir.1991) (concluding that when private parties abused D.C. court procedures, their actions cannot be ascribed to the state). Further, the subpoena was issued at the request of the Catholic Church, which is not a party to the present lawsuit. Appellant cannot now convincingly argue that Connick, Bigelow, and Tolar conspired with the other parties to release the material in violation of Appellant's rights. Without an agreement between private and state actors any possible joint action involving only private parties is not actionable under § 1983.

V. *State Law Claims*

A. Jurisdiction

Appellant argues that the district court abused its discretion by retaining jurisdiction over the pendent state claims once it dismissed the federal claims that were the basis of its jurisdiction.[7] Appellant contends that the district court should have dismissed the state court claims without prejudice.

The district court has discretionary power to adjudicate

---

[7]Several of the Appellees argue that the district court retained jurisdiction even after it dismissed the federal claims because Appellant had alleged diversity as a basis for federal jurisdiction. When Appellant, a New York citizen, added Rivera, an alleged New York citizen, as a party, he destroyed complete diversity and, thus, his basis for diversity federal jurisdiction. *Whalen v. Carter,* 954 F.2d 1087, 1095 (5th Cir.1992).

12

pendent claims after it has dismissed the federal claims that originally invoked its jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725-26, 86 S.Ct. 1130, 1138-39, 16 L.Ed.2d 218 (1966); *Transource Int'l, Inc. v. Trinity Indus., Inc.,* 725 F.2d 274, 286 (5th Cir.1984). Although at one time the Supreme Court leaned heavily toward requiring a district court to dismiss pendent claims when the underlying federal claims had been dismissed, the Court now takes the position that a district court should decide whether to retain jurisdiction based on considerations of judicial economy, convenience, fairness, and comity. *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988); *Rosado v. Wyman,* 397 U.S. 397, 404-05, 90 S.Ct. 1207, 1213-14, 25 L.Ed.2d 442 (1970).

Appellant argues that this Court has held that when federal claims have been dismissed pre-trial, pendent claims should be dismissed without prejudice because there has been no substantial use of federal judicial resources. *See La Porte Constr. Co. v. Bayshore Nat'l Bank,* 805 F.2d 1254 (5th Cir.1986). In *La Porte,* we reversed the district court's retention of jurisdiction and dismissal on the merits of pendent claims after it had dismissed the plaintiff's RICO claim on the basis of Federal Civil Procedure Rule 12(b)(6). *Id.* at 1257.

In *Guidry v. Bank of LaPlace,* 954 F.2d 278 (5th Cir.1992), however, we held that the district court did not abuse its

13

discretion in retaining jurisdiction over some pendent claims even after it had dismissed the federal claims on the basis of Rule 12(b)(6).  In *Guidry,* we reviewed *La Porte* and distinguished that case on three grounds.  First, unlike the plaintiff in *La Porte,* the plaintiff in *Guidry* did not file a prompt motion following judgment of dismissal asking the court to modify its decision and dismiss the state claims for lack of jurisdiction rather than on the merits.  Nor did the *Guidry* plaintiff argue in his opposition to the defendants' motions to dismiss that the district court should dismiss the pendent claims without prejudice if it were to dismiss the federal claims.  The plaintiff raised his argument for the first time on appeal.  *Id.* at 285.

Second, the *La Porte* defendants, in their memorandum to the district court in support of their motion to dismiss, argued that the pendent claims should be tried by a state court.  The *Guidry* defendants never took the position that the state claims should be tried in the state court.  We explained that the principle of fairness suggests that once the plaintiff has the opportunity to argue sufficiency of the merits to the district court, and the court has rendered a correct decision, such plaintiff should not be allowed a second try in state court over the defendants' objections.  *Id.* at 286.

Finally, the state claims in *La Porte,* although satisfying the "common nucleus of operative fact" test necessary for supplemental

jurisdiction, were not as similar to the federal claims as the pendent and federal claims in *Guidry.*  In *Guidry,* the state claims were fully briefed and argued.  Therefore, we concluded that the district court did not abuse its discretion in retaining jurisdiction over the state claims.  *Id.*

The facts concerning the 12(b)(6) dismissal in the present case resemble those in *Guidry.*  Although there is an indication in the record that Appellant objected to the district court's dismissal with prejudice, he did not file a formal motion nor did he argue in his opposition to Appellees' motions to dismiss that the district court should dismiss the pendent claims without prejudice if it were to dismiss the federal claims.  Moreover, none of the Appellees argued to the district court that a state court should decide the state claims.  All parties extensively briefed the state claims to the district court.  Finally, there is a close relationship between the issues and facts underlying the state and federal claims.  Thus, the principles of judicial economy and fairness weigh heavily in favor of the district court's disposal of the pendent claims on the merits.

B. State Constitutional Claims

Appellant's state constitutional claims mirror his federal claims under § 1983.  Louisiana courts have generally held that state due process and privacy claims must, like federal claims, involve state action.  *See, e.g., Delta Bank & Trust Co. v.*

*Lassiter,* 383 So.2d 330, 334 (La.1980); *Hatfield v. Bush,* 540 So.2d 1178, 1182 (La.App. 1st Cir.1989). Thus, for the same reasons discussed above, we affirm dismissal of the state law claims.

C. Negligence Claims

Appellant's only discussion of his negligence claims against Paddison and Tschirn is in his reply brief. An appellant abandons all issues not raised and argued in its *initial* brief on appeal. *United Paperworkers Int'l Union v. Champion Int'l Corp.,* 908 F.2d 1252, 1255 (5th Cir.1990); *Piney Woods Country Life Sch. v. Shell Oil Co.,* 905 F.2d 840, 854 (5th Cir.1990); *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.,* 729 F.2d 1530, 1539 n. 14 (5th Cir.1984).

Appellant does not brief the negligence claims against Connick. A party who inadequately briefs an issue is considered to have abandoned the claim. *Villanueva v. CNA Ins. Cos.,* 868 F.2d 684, 687 n. 5 (5th Cir.1989) (civil).

D. Invasion of Privacy

Appellant alleges that Raymond, Paddison, Tschirn, Angelico, WDSU, Rivera and Tribune invaded his right of privacy under Louisiana Civil Code article 2315. Under Louisiana law, one can be held liable for invasion of privacy for making an "unreasonable disclosure of embarrassing private facts." *Jaubert v. Crowley Post-Signal, Inc.,* 375 So.2d 1386, 1388 (La.1979). To recover for

16

this tort, a plaintiff must prove that 1) the defendant publicized information concerning the plaintiff's private life, 2) the publicized matter would be highly offensive to the reasonable person, and 3) the information is not of legitimate public concern. *Roshto v. Hebert,* 439 So.2d 428, 430 (La.1983). Whether a matter is of public concern is a question of law for the court. *See Rosanova v. Playboy Enters., Inc.,* 411 F.Supp. 440, 444 (S.D.Ga.1976), *aff'd,* 580 F.2d 859 (5th Cir.1978).

The district court held that the materials were a matter of legitimate public concern. It explained that the materials related to Appellant's guilt or innocence of criminal conduct.[8] Also, the material implicated the public's concern with the performance of its elected DA, especially because the DA's decision cannot be reviewed by a court. *See State v. Perez,* 464 So.2d 737, 744 (La.1985) (explaining that the district attorney is given absolute discretion in the institution of criminal charges). Finally, the materials concerned Appellant's activities while an ordained Catholic priest and the Church's response to those activities.

At oral argument, Appellant conceded the newsworthiness of the details surrounding his story. Appellant contends, however, that the broadcast portions of the homemade videotape and allegedly

---

[8]Homosexual sodomy is considered a crime against nature in Louisiana. La.Rev.Stat. § 14:89 (West 1989). Additionally, Louisiana makes it a crime to intentionally possess child pornography. La.Rev.Stat. § 14:81.1(A)(3) (West Supp.1993).

confidential deposition added nothing to this topic and were what constituted the invasion of his privacy. We disagree. The materials broadcast by the Appellees were substantially related to Appellant's story. Perhaps the use of the materials reflected the media's insensitivity, and no doubt Appellant was embarrassed, but we are not prepared to make editorial decisions for the media regarding information directly related to matters of public concern.[9] *See, e.g., Ross v. Midwest Communications, Inc.,* 870 F.2d 271, 275 (5th Cir.) ("judges, acting with the benefit of hindsight, must resist the temptation to edit journalists aggressively"), *cert. denied,* 493 U.S. 935, 110 S.Ct. 326, 107 L.Ed.2d 316 (1989); *Neff v. Time, Inc.,* 406 F.Supp. 858, 860 (W.D.Pa.1976) (noting that "the courts are not concerned with establishing canons of good taste for the press or the public") (internal quotations omitted); *Cape Publications, Inc. v. Bridges,* 423 So.2d 426, 427-28 (Fla.Dist.Ct.App.1982) (concluding that when plaintiff's nude picture was relevant to a story of public interest, there is no invasion of privacy, even though picture may be embarrassing or distressful to the plaintiff), *cert. denied,* 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 229 (1983).

VI. *Amendment of Pleadings*

---

[9]Because we find the broadcast of the materials a legitimate matter of public concern, we need not address whether the media is entitled to immunity from liability under the First Amendment for the public disclosure of lawfully obtained truthful facts.

18

Appellant argues that the district court erred in dismissing his complaint without leave to amend.  Although leave to amend should be freely given, this is not a case in which the district court denied Appellant's request to amend. *See La Porte,* 805 F.2d at 1256.  Appellant did not ask the district court for leave to amend;  his brief to this Court is his first such request. Moreover, Appellant has failed to indicate specifically how he would amend his complaint to overcome the 12(b)(6) dismissal. Therefore, we have no basis on which to find an abuse of discretion by the district court.  *See id.* at 1256-57;  *accord Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 880-81 (1st Cir.1991) (concluding that failure to request to amend arguably precludes the court of appeals from reviewing the issue);  *Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037 (6th Cir.1991) (holding a district court does not abuse its discretion in failing to grant a party leave to amend when such relief is not sought).

CONCLUSION

We hereby modify the district court's judgment insofar as it dismisses with prejudice Appellant's claims for due process on the issue of transactional immunity and for fair trial under the state and federal constitutions to dismiss those claims for lack of subject matter jurisdiction.  The district court's judgment is affirmed as modified.

MODIFIED IN PART and AFFIRMED.

19