**John Patrick LOWE, Bankruptcy Trustee, Plaintiff,**

v.

**HEARST COMMUNICATIONS, INC. and Hearst Newspapers Partnership, L.P., Defendants.**

No. SA–05–CA–554–OG.

United States District Court,
W.D. Texas,
San Antonio Division.

Feb. 6, 2006.

Broadus Autry Spivey, Spivey & Ainsworth, P.C., Austin, TX, for Plaintiff.

Karen Ann Monsen, Stephen R. Fogle, Jackson Walker, L.L.P., San Antonio, TX, Charles L. Babcock, Jackson Walker LLP, Dallas, TX, for Defendants.

## AMENDED OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

GARCIA, District Judge.

Defendants' motion for partial reconsideration (docket no. 21) is GRANTED; the Court's opinion and order of December 7, 2005 is WITHDRAWN, and the following opinion and order is substituted in its place.

■■■ Before the Court is defendants' motion to dismiss the complaint. FED. R. CIV. P. 12(b)(6).[1] Plaintiff, John Patrick

---

1. A claim will not be dismissed on a Rule 12(b)(6) motion unless it appears to a certainty that no relief can be granted under any set of facts provable in support of its allegations, or that the allegations, accepted as true, do not present a claim upon which relief legally can be obtained. *Adolph v. Federal Emergency Management Agency*, 854 F.2d 732, 735 (5th Cir.1988). The Court will accept the well-pleaded allegations in the compliant as true, construe those allegations in the light most favorable to the plaintiff, and draw all inferences in his favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Truman v. United States*, 26 F.3d 592, 594 (5th Cir.1994). In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir.1992). Thus, the Court will set out the facts as alleged in plaintiff's complaint. In doing so, however, the Court is mindful that it need not accept as true conclusory allegations or unwarranted deductions of fact. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir.1994).

Lowe, Bankruptcy Trustee for the Estates of Mary and Ted Roberts, brought this suit seeking damages for public disclosure of private facts and intentional infliction of emotional distress. The disclosure of private facts occurred with the publication on June 13, 2004 in the "San Antonio Express–News,"[2] a daily newspaper of general circulation, of an article headlined, "Sex, lawyers, secrets at heart of sealed legal case" ("the article"). The article was written by Maro Robbins and Joseph S. Stroud. The article[3] describes how Ted Roberts and his wife Mary bilked several of Mary's lovers out of tens of thousands of dollars. According to the article, Mary ran a personal ad on the internet seeking "erotic and intellectual" relationships with men. Ted would prepare draft petitions and settlement agreements and present them to Mary's lovers, naming them as potential defendants and threatening them with legal action that would publically expose their affairs with Mary. As many as five men ultimately entered into settlement agreements with Ted to avoid litigation. Ted collected from $75,000 to $155,000 from the men, according to the article.

Hearst intervened in a state court lawsuit involving the Robertses and a former associate of their law firm. In an appeal in that suit, the Texas Fourth Court of Appeals issued an opinion on August 29, 2003 holding valid a trial court order sealing from public view a set of documents referred to as the "202 Documents." *Roberts v. West*, 123 S.W.3d 436, 443 (Tex. App.–San Antonio 2003, pet. denied). The 202 Documents are described by the Court of Appeals as:

> a group of documents which includes not only proposed pleadings but also related factual documents such as e-mails. The pleadings are a set of proposed petitions prepared by Ted Roberts, naming himself as plaintiff and his wife Mary as a defendant along with other third parties. Among the related documents are draft settlement agreements for the proposed defendants.

*Roberts*, 123 S.W.3d at 438 n. 3.

On June 11, 2004, Mary Roberts received a call on her cell phone from Robbins and Stroud who identified themselves as Express–News reporters and told Roberts they were writing an article regarding Ted Roberts, the 202 Documents, and related matters. Ted Roberts delivered a letter to the Express–News that day warning against contravening the sealing order and noting the privacy issues involved. Also on June 11, the Robertses sought emergency relief from the Fourth Court of Appeals, which granted the relief and issued its mandate relating to its August 29, 2003 opinion. The mandate was delivered to the Express–News on June 11. The article was published two days later. At some point thereafter, the Robertses declared bankruptcy. The bankruptcy trustee is pursuing this action on behalf of the Robertses' bankruptcy estates.

Plaintiff contends that the article included information contained in the 202 Documents and thus violated the sealing order and mandate. There seems to be no dis-

---

**2.** The Express–News is a wholly owned entity of defendant Hearst Newspapers Partnership, L.P. of which Hearst Communications, Inc. is the sole general partner. Unless otherwise specified, the defendants will be referred to collectively as "Hearst."

**3.** Plaintiff did not attach a copy of the article to his complaint, but Hearst attached a copy to its motion to dismiss. Courts may consider documents attached to the motion to dismiss if those documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). The article meets both those criteria.

pute that the 202 Documents consist largely of the proposed petitions and settlement agreements drafted by Ted and presented to Mary's various paramours. Hearst contends that the Express–News obtained the 202 Documents and various court transcripts separate and apart from the judicial process.

## I. Invasion of privacy.

An individual has the right to be free from the public disclosure of embarrassing private facts about the individual. *Industrial Found. of the South v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 682 (Tex.1976). To establish the tort of invasion of privacy based upon the public disclosure of private facts, the plaintiff must demonstrate that (1) publicity was given to matters concerning his private life, (2) the publication of which would be highly offensive to a reasonable person of ordinary sensibilities, and (3) the matter publicized was not of legitimate public concern. *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473–74 (Tex.1995); *Industrial Found. of the South*, 540 S.W.2d at 682.

Plaintiff argues that the Court must remain narrowly focused on whether he has properly pleaded a cause of action for invasion of privacy based on the Express–News' publication of facts contained in the sealed 202 Documents. Hearst counters that plaintiff cannot legally establish a privacy claim because the Robertses had no expectation of privacy and because the article reported on a matter of legitimate public concern.

### A. Legally cognizable expectation of privacy.

Hearst first argues that the Robertses lacked any legally cognizable expectation of privacy in the facts published because they had already distributed the draft petitions, settlement agreements, and e-mails contained in the 202 Documents to their potential legal adversaries. Plaintiff asserts that this argument is an assertion of a defense, not a pleading defect. Plaintiff also argues that, in any event, the "publication" did not extend beyond the Robertses and Mary's paramours—they were not circulated publically.

The tort requires circulation of the private facts to more than a small, closed circle of people. " 'Publicity' requires communication to more than a small group of persons; the matter must be communicated to the public at large, such that the matter becomes one of public knowledge." *Industrial Found. of the South*, 540 S.W.2d at 683–84 (citing RESTATEMENT (SECOND) OF TORTS § 652D, comment a). The mere fact that the Robertses disclosed these documents to a handful of individuals who had every incentive not to disclose them publicly does not destroy the Robertses' expectation of privacy as a matter of law.

### B. Legitimate public concern.

The third element that plaintiff would have to prove to establish invasion of privacy by public disclosure of private facts is that the matter publicized was not of legitimate public concern. *Star–Telegram, Inc.*, 915 S.W.2d at 473–74. Whether a matter is of public concern is a question of law for the court. *Cinel v. Connick*, 15 F.3d 1338, 1346 (5th Cir. 1994). The inquiries regarding legitimate public concern are the same under the First Amendment and the law of Texas. *Ross v. Midwest Communications, Inc.*, 870 F.2d 271, 273 (5th Cir.1989).

"[W]here the facts published are of 'legitimate public concern,' the right to publish information will overcome privacy rights." *American Civil Liberties Union of Mississippi, Inc. v. State of Miss.*, 911 F.2d 1066, 1071 (5th Cir.1990). The privilege extends beyond the dissemination of news "to information concerning interest-

ing phases of human activity" even when the individuals thus exposed did not seek or have attempted to avoid publicity. *Campbell v. Seabury Press,* 614 F.2d 395, 397 (5th Cir.1980). "The privilege is broad and extends beyond subjects of political or public affairs to all matters of the kind customarily regarded as 'news' and all matters giving information to the public for purposes of education, amusement or enlightenment, where the public may reasonably be expected to have a legitimate interest in what is published." *Anonsen v. Donahue,* 857 S.W.2d 700, 703–04 (Tex. App.—Houston [1 Dist.] 1993, writ denied).

> The risk of . . . exposure [of the individual to the public] is an essential incident of life in a society which places a primary value on freedom of speech and of press. "Freedom of discussion, if it would fulfill its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period."

*Time, Inc. v. Hill,* 385 U.S. 374, 388, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) (quoting *Thornhill v. Alabama,* 310 U.S. 88, 102, 60 S.Ct. 736, 84 L.Ed. 1093 (1940)).

Reports of the investigation of crimes or matters pertaining to criminal activity have almost without exception been held to be newsworthy or matters of legitimate public interest as a matter of law. *See Cox Broad. Corp. v. Cohn,* 420 U.S. 469, 492, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) ("commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions . . . are without question events of legitimate concern to the public and consequently fall within the responsibility of the press to report the operations of government"); *Cinel,* 15 F.3d at 1345–46 (even though plaintiff, a former priest, was not charged with a crime, facts indicating that he may have possessed child pornography and engaged in homosexual activity—a crime in Louisi-

ana—were matters of public concern; also church's response to activities which occurred during plaintiff's priesthood was issue of public concern); *see also Dresbach v. Doubleday & Co.,* 518 F.Supp. 1285, 1290 (D.D.C.1981) (dicta) ("The public has a legitimate interest in the facts about past crimes and their investigation and prosecution, as well as the possible motivating forces in the background of the criminal.").

■ Without question, the facts depicted in the article are matters of legitimate public concern. The article described an alleged blackmail scheme by lawyers who were willing to bend if not break the law to procure money from Mary's unsuspecting paramours. The public is legitimately interested in and entitled to know that two local lawyers, who hold themselves out as pursuers of justice and skilled and vigorous advocates on behalf of their clients, are using the processes of the law in such a legally and morally questionable manner. The article also presented insights into the operation of the legal system and a debate involving the ethics and legality of the Robertses' scheme.

■ In the presence of the publication of matters of legitimate public concern, the courts must refrain from invading the discretion of editors. *See, e.g., Cinel,* 15 F.3d at 1346 ("we are not prepared to make editorial decisions for the media regarding information directly related to matters of public concern"); *Ross,* 870 F.2d at 275 ("judges, acting with the benefit of hindsight, must resist the temptation to edit journalists aggressively").

■ Because, as a matter of law, plaintiff cannot establish an essential element of his invasion of privacy cause of action, that cause of action must be dismissed. It is therefore unnecessary to reach the issue of whether Hearst obtained the information for the article in violation of the court of

appeals' order. *See Star–Telegram, Inc.*, 915 S.W.2d at 475 (because newspaper's summary judgment evidence established that published facts identifying rape victim were of legitimate public concern, it was unnecessary to reach the issue involving whether the information was lawfully obtained); *Ross*, 870 F.2d at 275 (details of broadcast were newsworthy; unnecessary to reach issue of whether information was lawfully obtained).

## II. Intentional infliction of emotional distress.

Hearst argues that plaintiff cannot maintain an intentional infliction of emotional distress action for three reasons: (1) the tort is a "gap-filler" that is available only when the plaintiff has no other recognized theory of recovery; (2) the conduct of the Express–News in this case was not extreme and outrageous as a matter of law; and (3) the federal and state constitutions provide immunity from intentional infliction of emotional distress claims based on accurate reports of newsworthy events.

### A. Gap-filler.

 Intentional infliction of emotional distress is a "gap-filler" tort, allowing recovery in the rare instances in which a defendant intentionally inflicts severe emotional distress in an unusual manner so the victim has no other recognized theory of redress. *Hoffmann–La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). "Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Id.* Properly limited, the tort is not available when the actor " 'intends to invade some other legally protected interest,' even if emotional distress results." *Id.See also Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816–18 (Tex.2005).

 Because plaintiff's action is grounded on an invasion of privacy which itself provides damages for emotional distress, *Billings v. Atkinson*, 489 S.W.2d 858, 861 (Tex.1973), a simultaneous action for intentional infliction of emotional distress is unavailable. *See, e.g., Goins v. Hitchcock Indep. Sch. Dist.*, 191 F.Supp.2d 860, 871–72 (S.D.Tex.2002) ("When a plaintiff alleges a claim for intentional infliction of emotional distress based on the same facts making up her Title VII claim, the former is preempted .... Therefore, to the extent that Plaintiff's common law tort claim for intentional infliction of emotional distress and her Title VII claim arise from identical factual allegations, her intentional infliction of emotional distress claim cannot survive."); *Johnson v. Blue Cross/Blue Shield of Texas*, 375 F.Supp.2d 545, 549–50 (N.D.Tex.2005) (same).

### B. Extreme and outrageous.

 In order to recover at trial on a state-law claim of intentional infliction of emotional distress, a plaintiff must prove that the defendant (1) acted intentionally or recklessly (2) in an extreme and outrageous manner (3) that caused the plaintiff to suffer emotional distress (4) that was severe. *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 195 (5th Cir.1996); *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). Conduct is "outrageous" for purposes of an intentional infliction of emotional distress claim only if it surpasses all possible bounds of decency, such that it is utterly intolerable in a civilized community. *Weller*, 84 F.3d at 195. Whether a defendant's conduct is extreme or outrageous enough to permit recovery is a matter within the province of the court. *Atkinson v. Denton Publishing Co.*, 84 F.3d 144, 151 (5th Cir.1996).

 Even if a cause of action for intentional infliction of emotional distress

**676**

were available in conjunction with a privacy action involving the same facts, Hearst argues that as a matter of law its conduct was not extreme or outrageous. A review of Texas case law confirms that position. Publication of truthful, albeit embarrassing, information has again and again been determined not to constitute extreme and outrageous conduct. *See Cox Texas Newspapers, L.P. v. Wootten,* 59 S.W.3d 717, 724 (Tex.App.—Austin 2001, pet. denied) (unauthorized publication of pictures of dead body was not extreme and outrageous); *Hogan v. Hearst Corp.,* 945 S.W.2d 246, 251–52 (Tex.App.—San Antonio 1997, no writ) (newspaper's publication of the names of persons arrested for lewd conduct was not extreme and outrageous); *KTRK Television v. Felder,* 950 S.W.2d 100, 108 (Tex.App.—Houston [14th Dist.] 1997, no writ) ("substantially true" broadcast that a school teacher was under investigation for charges of physically threatening and verbally abusing students was not outrageous as a matter of law); *Rogers v. Dallas Morning News, Inc.,* 889 S.W.2d 467, 474 (Tex.App.—Dallas 1994, writ denied) (summary judgment granted for defendants on intentional infliction of emotional distress claim regarding the publication of substantially true articles about the questionable financial dealings of a charity under the plaintiff's stewardship).

For the reasons set forth above, Hearst's motion to dismiss plaintiff's intentional infliction of emotional distress claim will be granted.

### C. *Immunity.*

Given the holdings in II.A. and B. above, it is unnecessary to opine whether courts interpreting the federal and Texas Constitutions have found a broad immunity from claims of intentional infliction of emotional distress based on accurate reports of newsworthy events.

### III. Conclusion.

Hearst's motion to dismiss is GRANTED, and plaintiff's claims are DISMISSED with prejudice.