**UNITED STATES of America**

v.

**Sami Amin AL–ARIAN, Sameeh Hammoudeh, Ghassan Zayed Ballut, and Hatim Naji Fariz**

**No. 8:03–CR–77–T–30TBM.**

United States District Court, M.D. Florida, Tampa Division.

June 12, 2003.

Jeffrey Geldert Brown, Florin, Roebig & Walker, P.A., Palm Harbor, Franklyn Louderback, Louderback and Helinger, St. Petersburg, Nicholas M. Matassini, The Matassini Law Firm, P.A., Linda G. Moreno, Solomon Law Group, Tampa, for Sami Amin Al–Arian (1) aka Amin aka Abu Abdullah aka The Secretary, defendant.

## *ORDER*

MOODY, District Judge.

This cause came on for consideration on June 5, 2003, at the status conference for this matter, upon:

1. Defendant Ghassan Ballut's Motion for Extension of Time to File Motion to Dismiss and Memorandum of Law (Dkt.# 137);

2. Defendant Sameeh Hammoudeh's Motion for Adoption (Dkt.# 141);

3. The government's Motion to Exclude Time From Speedy Trial Calculation and Memorandum of Law (Dkt.# 149);

4. Defendant Hatim Naji Fariz's Motion for Severance and Continuance and Memorandum of Law in Support (Dkt.# 153);

5. Defendant Fariz's Unopposed Motion to Adopt Defendant Ballut's Motion for Extension of Time to File Motions to

Dismiss and to Request a Bill of Particulars (Dkt.# 155); and

6. Defendants Hammoudeh and Ballut's *ore tenus* Motion to Adopt Fariz's Motion for Severance and Continuance and Memorandum of Law in Support.

### GENERAL BACKGROUND

On February 19, 2003, Defendants [1] were indicted. The indictment contained fifty counts and includes count(s) for: (1) conspiracy to commit racketeering; (2) conspiracy to commit murder, maim, or injure person outside the United States; (3) conspiracy to provide material support to or for the benefit of terrorists; (4) use of interstate facilities to promote unlawful activity; (5) obstruction of justice; (6) perjury; and (7) violation of the immigration laws of the United States. The racketeering count alleges two hundred fifty six overt acts encompassing a wide variety of activities over a nineteen year period of time.

As its principal evidence against the Defendants, the government intends to use recordings of two hundred fifty telephone calls between the Defendants and alleged co-conspirators. None of these recordings remain classified and all have been provided to the Defendants.[2] These telephone recordings are among some 21,000 hours of telephone recordings that the government recorded under one hundred fifty two wiretap applications obtained pursuant to the Foreign Intelligence Surveillance Act ("FISA"). Almost all of these recordings are in Arabic and have to be translated. Complicating matters, a majority of the recordings are still classified, meaning that interpreters hired by Defendants will likely have to obtain security clearances.[3] In addition to the recordings, the government is in possession of five hundred fifty videotapes, thirty hard drives from seized computers, hundreds of boxes of documentary evidence, and numerous foreign documents (most in Hebrew from Israel).

No party disputes that depositions will likely have to be taken in foreign countries. No party disputes that it will likely take at least six months to a year to

---

1. For purposes of this Order when this Court uses the word "Defendants" it is only referring to Defendants Al–Arian, Hammoudeh, Ballut, and Fariz, who are the four defendants out of the eight indicted currently before this Court.

2. At the June 5, 2003, status conference the government reported that another two hundred fifty or so telephone calls that are "pertinent" were provided to the Defendants. None of these telephone calls remain classified. While this Court is not sure what makes these calls pertinent or what pertinent even means as a legal proposition, this Court approves the pace at which the government is providing discovery. This Court would request that the Federal Public Defender (who volunteered to coordinate the hiring of interpreters) proceed as expeditiously as possible to get a budget approved and interpreters hired to review this discovery.

3. The government has not yet sought a protective order under the Classified Information Procedures Act, 18 U.S.C.App. 3, § 1, *et seq.* ("CIPA"). At the status conference, the government indicated that a motion for protective order would be filed shortly. In response, Al–Arian's counsel raised the constitutionality of not allowing him to talk with Al–Arian about classified information. It seems premature for this Court to even consider this issue because it is not clear what measures the government will seek to protect the classified information or what exactly `is classified about the recordings. *See, e.g., United States v. Bin Laden,* case no. 98–cr–1023–LBS, 2001 WL 66393, at *2 (S.D.N.Y. Jan.25, 2001) (discussing differences in protective orders where defendant was previously in possession of classified information and where defendant was not in possession of information); *also* 18 U.S.C.App. 3, § 4 (authorizing court to enter an order allowing United States to delete specified items of classified information from documents made available to defendant through discovery).

conduct trial in this matter. The government and Defendants Hammoudeh, Ballut, and Fariz all agree that it will take at least eighteen months for the government to copy and for Defendants to review the telephone recordings and conduct the other discovery in this case.

## PROCEDURAL BACKGROUND

On February 20, 2003, Defendants were arrested and made their initial appearances.[4] At their initial appearances, the government orally moved to detain the Defendants. An initial detention hearing was set for five days later on February 25, 2003. At that hearing, Defendants, including Al–Arian, requested a continuance, which was granted.[5] On March 20–25, 2003, the detention hearing was held.[6]

On March 25, 2003, Hammoudeh, Ballut, and Fariz were arraigned. Hammoudeh, Ballut, and Fariz waived their right to speedy trial at their arraignment. On March 25, 2003, Al–Arian requested his arraignment be continued. On April 7, 2003, Al–Arian was arraigned, and he refused to waive speedy trial.

On April 10, 2003, the magistrate decided the government's motion to detain the Defendants. On that same day, Hammoudeh filed a motion for appointment of co-counsel, which was not decided until May 16, 2003. In the interim on April 15, 2003, Hammoudeh filed a motion for review of the detention order, which is still pending and has not been taken under advisement

because not all materials have been filed. On April 21, 2003, Al–Arian and Hammoudeh also filed motions to modify the conditions of their detention. Those motions were not decided until May 28, 2003.

Currently, there are some seventeen pretrial motions pending on this Court's docket, including three filed by Al–Arian.[7] In addition, on May 1, 2003, this Court held a status conference in this matter. At that hearing, Al–Arian's counsel indicated that they were unable to take a position on when their client's speedy trial time would run and whether Al–Arian was going to waive it. His counsel also indicated that Al–Arian wished to represent himself. Because there was no motion pending for Al–Arian to represent himself and could be no resolution of the speedy trial issue, this Court continued the status conference. In other words, Al–Arian delayed this proceeding a month, while he considered what positions to take.

## STATUS CONFERENCE AND SPEEDY TRIAL

On May 9, 2003, this Court entered an order (Dkt.# 122), stating that all parties should be prepared at the June 5th status conference to discuss the application of the Speedy Trial Act in this case to all Defendants. On June 3, 2003, the government filed its Motion to Exclude Time from the Speedy Trial Calculation and Memorandum of Law (Dkt.# 149), requesting that this Court exclude from the speedy trial

---

**4.** All but Defendant Ballut made their initial appearances in the Middle District of Florida. Ballut was arrested and made his first appearance in the Northern District of Illinois. On or about March 4, 2003, Ballut was transported to the Middle District of Florida. Ballut made his initial appearance in front of a magistrate or judge in this district on March 20, 2003.

**5.** In the interim on March 12, 2003, Al–Arian requested expedited discovery. On March 17,

2003, Al–Arian's request for expedited discovery was denied.

**6.** This was Defendant Ballut's first appearance in front of a judge in this district.

**7.** None of Al–Arian's pending motions have been pending more than three weeks. Altogether, Al–Arian has filed, orally made or joined in some nine plus pretrial motions, most of which have been aimed at delaying a quicker trial.

calculation all days between February 19, 2003 and June 5, 2003. On June 4, 2003, Defendant Fariz filed a Motion for Severance and for Continuance and Memorandum of Law (Dkt.# 153). Fariz argued for either or both severance and an at least eighteen month continuance in the trial date, so that his rights to a fair trial and effective assistance of counsel were not denied. On June 5, 2003, Defendants Hammoudeh and Ballut joined in Fariz's motion. Al–Arian orally objected to both the government's and Fariz's motion.[8]

## DISCUSSION

### I. THE SPEEDY TRIAL ACT

The Speedy Trial Act requires a defendant to be tried within seventy days from the filing of his indictment or from the date on which he appears before a judge or magistrate, whichever occurs first. *See* 18 U.S.C. § 3161(c)(1). Numerous exceptions exist, however, that exclude time from the seventy day period. *See* 18 U.S.C. § 3161(h). The government argues that from the date of Al–Arian's indictment and arrest no time has run on Al–Arian's speedy trial clock through the date of the status conference. Al–Arian's co-defendants moved to exclude, through a motion for continuance, all time from the status conference through at least January 2005 from Al–Arian's speedy trial clock. Al–Arian objected, arguing that such exclusions are unconstitutional and that time

for certain pretrial motions should not be excluded from his speedy trial clock.

### A. Exclusion of time between February 20–June 5, 2003

■ This Court concludes that no time has elapsed on Al–Arian's speedy trial clock through June 5, 2003. The parties all agree that no time elapsed on Al–Arian's speedy trial clock until Ballut made his initial appearance in a court in this district on March 20, 2003. The parties dispute what time has elapsed since March 20, 2003.

The Government contends that no time has elapsed from Al–Arian's speedy trial clock because a pretrial motion was either filed or pending each day since March 20, 2003, through the date of the status conference, citing to the speedy trial exceptions contained in 18 U.S.C. § 3161(h)(1)(F), (h)(7). Al–Arian contends that only certain pretrial motions are excludable from his speedy trial clock, arguing (without citation to any authority) that the delay caused by motions made by his co-defendants and concerning his pretrial conditions should not be excluded from his speedy trial clock.

■ The Eleventh Circuit has repeatedly held that pretrial motions filed by one defendant toll the speedy trial clock for all co-defendants.[9] *See United States v. Schlei,* 122 F.3d 944, 985 n. 15 (11th Cir. 1997); *United States v. Twitty,* 107 F.3d 1482, 1488 (11th Cir.1997). Under this line

---

**8.** Al–Arian's counsel also objected to this Court's requirement that all counsel complete security clearance packets. Counsel asserted that he, not his client, had a constitutional right to privacy that precluded the government and this Court from requiring him to fill out a security clearance packet. Counsel cited no case law for this proposition.

**9.** No motion for severance of Al–Arian has been made or granted. Al–Arian failed to argue that any excludable delay caused by a co-defendant's motion was unreasonable.

This Court holds that all the delay caused by any co-defendant's motion is reasonable because it is not excluding more than thirty days after a motion was taken under advisement from Al–Arian's speedy trial clock. *See* 18 U.S.C. § 3161(h)(1)(J). Al–Arian has shown no prejudice to his defense and a significant part of the delay being excluded is because of motions filed by him. *See United States v. Davenport,* 935 F.2d 1223, 1236–38 (11th Cir. 1991). Accordingly, since the delay was not unreasonable, it is properly attributed to Al–Arian. *See* 18 U.S.C. § 3161(h)(7).

of cases, it is irrelevant whether the co-defendant has filed a waiver of his right to speedy trial. *See Schlei,* 122 F.3d at 985 n. 15. The Eleventh Circuit reasoned that Congress determined that "the efficiency and economy of multi-defendant criminal trials far outweigh the granting of severance where the reason was simply the passage of time." *Id.* (citing to *United States v. Varella,* 692 F.2d 1352, 1359 (11th Cir.1982)).

▇ The Eleventh Circuit has also not differentiated whether time should be excluded depending on what type of pretrial motion is pending.[10] *See, e.g., Schlei,* 122 F.3d at 985 (excluding time while the government had a motion to depose key witness located in Japan, motion to reopen evidentiary hearing, emergency motion to modify order, and a motion for indefinite continuance were pending); *United States v. Davenport,* 935 F.2d 1223, 1230–31 & 1235–38 (11th Cir.1991) (excluding time while motions for reinstatement of bond, for continuance of trial, for release from pretrial detention, to dismiss indictment, for severance, for review of bond status, for transcription, for review of the constitutionality of pretrial detention were pending); *United States v. Vasser,* 916 F.2d 624, 627 (11th Cir.1990) (excluding time for

motion for scientific examination). Indeed, some of the very motions that Al–Arian claims should not be excluded from his speedy trial clock (motions concerning detention and motions filed by co-defendants concerning conditions of release or of detention) were in fact excluded from a defendant's speedy trial clock by the Eleventh Circuit in *Davenport.* 935 F.2d at 1235–38. Accordingly, this Court overrules Al–Arian's objections to the exclusion of all time between February 20, 2003 and June 5, 2003 and grants the government's motion to exclude.[11]

### B. Exclusion of time between June 5, 2003—January 3, 2005

▇ Al–Arian's co-defendants move for a continuance of any trial date until after at least January 2005. They argue that this case is a complex case with voluminous discovery, novel questions of fact and law, in a relatively new and complex area (terrorism), such that it is unreasonable to expect adequate preparation for trial and for pretrial proceedings within seventy days.[12] Al–Arian does not dispute that this case is a complex case with novel questions of law or fact in a relatively new area. Instead, he objects that the continuance will violate his constitutional rights.[13]

---

10. In excluding time from a defendant's speedy trial clock, a court is to exclude the day that the motion is filed through the day that the motion is decided. *See Twitty,* 107 F.3d at 1487–88.

11. Between March 20–25, 2003, the parties were at a hearing on whether the Defendants would be detained. The motion for detention was not decided until April 10, 2003. On April 10, 2003, Hammoudeh (Al–Arian's co-defendant) filed a motion for appointment of co-counsel, which was not decided until May 18, 2003. In the interim on April 15, 2003, Hammoudeh filed a motion for review of the detention order. Hammoudeh's motion is still pending and is not yet under advisement. On April 21, 2003, Al–Arian and Hammoudeh also filed motions to modify the conditions of

their detention. Those motions were not decided until May 28, 2003. Between April 21 and June 3, 2003, some seventeen motions were filed and were pending on this Court's docket at the time of the status conference, including three filed by Al–Arian. Even if this Court limited the excludable time for all motions to thirty days under 18 U.S.C. § 3161(h)(1)(J), which Al–Arian has not argued for, a motion was pending each day between March 20–June 5, 2003.

12. The government concurred in the co-defendants assessment that this case is a complex case.

13. This Court assumes that Al–Arian is arguing that his Sixth Amendment right to a speedy trial will be violated. Al–Arian did not specify which right will be violated.

This Court finds that this case is a complex, multi-defendant case in a relatively new area of law. This Court will be faced with novel questions of fact and law throughout this case. In addition, discovery in this case is voluminous. The government is making available to the Defendants 21,000 hours of telephone recordings. Almost all of the conversations are in Arabic and have to be translated. Most of the 21,000 hours of recorded conversations are still classified (except for those that the government will use in its case in chief and approximately 250 other "pertinent" conversations), meaning that interpreters hired by Defendants will likely have to obtain a security clearance. In addition to the telephone recordings, the government is in possession of five hundred fifty videotapes, thirty hard drives from computers, hundreds of boxes of documentary evidence, and numerous foreign documents (most in Hebrew from Israel). Al–Arian's co-defendants indicate that it will also be necessary to conduct depositions in foreign countries.[14]

This Court concludes that the co-defendants' motions for continuance should be granted because the ends of justice in granting the continuance outweigh the best interest of the public and Al–Arian's right to a speedy trial.[15] This Court reaches its "ends of justice" conclusion because either (1) this is a complex case and it is unreasonable to expect adequate preparation for pretrial proceedings and for trial within seventy days, see 18 U.S.C. § 3161(8)(B)(ii); or (2) if this case is not a complex case, to go to trial more quickly than January 2005, would deny defense counsel acting diligently the reasonable time necessary for effective preparation, see 18 U.S.C. § 3161(8)(B)(iv). Like with pretrial motions, reasonable delay caused by a continuance granted to a co-defendant, who has not been severed, is attributable to Al–Arian.[16] 18 U.S.C. § 3161(h)(7). Accordingly, all time from June 5, 2003 through January 10, 2005 will

---

14. If this Court did not grant Defendants motion for continuance now it would later likely face an application for a foreign deposition and could exclude up to one year from Al–Arian's speedy trial clock. *See* 18 U.S.C. § 3161(h)(9).

15. The Eastern District of Virginia concluded in a terrorism case with similar legal, factual, and discovery issues that the case was complex for speedy trial purposes and that a continuance was warranted. *See United States v. Moussaoui*, case no. 01–455–A, 2001 WL 1887910, at *1 (E.D.Va. Dec.27, 2001).

16. Again, Al–Arian failed to raise that the delay attributable to his co-defendants was unreasonable. Congress in enacting the Speedy Trial Act found that the utility in having multi-defendant trials outweighed the desirability of severance to meet the 70 day time requirement. *See Davenport*, 935 F.2d at 1236. The Eleventh Circuit has approved the use of open ended continuances under the Speedy Trial Act. *See Twitty*, 107 F.3d at 1489. Moreover, the Eleventh Circuit has found reasonable a delay of thirty eight months under the Speedy Trial Act under similar circumstances. *See United States v. Register*, 182 F.3d 820, 828 n. 8 (11th Cir. 1999).

The continuance that this Court is granting is not open ended. It is likely given the complex nature of the issues in this case and the presence of classified documents that there will be a large number of pretrial motions and that discovery will consume the entire eighteen month period. Al–Arian again has made no showing of actual prejudice to his case. This Court concludes that eighteen months is the minimum amount of time that Al–Arian's co-defendants will require to adequately prepare pretrial motions and for trial if they act diligently. Scheduling a trial date on the soonest possible date after this time period runs, balances his co-defendants' rights to effective representation and to a fair trial and this Court's congressionally mandated interest to promote judicial economy and efficiency against Al–Arian's right to a speedy trial.

be excluded from Al–Arian's speedy trial clock.

### C. Constitutionality of exclusion of time

█ Al–Arian's constitutional right to speedy trial under the Sixth Amendment is not violated by granting his co-defendants' motion for continuance and excluding the time between March 20–June 5, 2003. In *Barker v. Wingo*, the Supreme Court established a four part test to determine when a defendant's Sixth Amendment right to a speedy trial was violated. 407 U.S. 514, 530–32, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1982). Under the *Barker* test, a court is to examine: (1) the length of the delay; (2) the reason for the delay; (3) whether and how the defendant asserted his right to a speedy trial; and (4) the prejudice to the defendant. *See id.*

The Supreme Court has further stated that the first factor serves as a gate keeper, and analysis of the other factors is not required unless some "presumptively prejudicial" period of delay occurred. *See id.* at 530, 92 S.Ct. 2182. Generally, a delay of over one year is presumptively prejudicial. *See Register*, 182 F.3d at 827. The continuance this Court is granting is for eighteen months and the total delay from indictment and arrest is twenty two months. Thus, Al–Arian meets the first factor of the *Barker* test.

Moreover, the Eleventh Circuit has concluded that unless the first three *Barker* factors weigh heavily against the government a defendant must show actual prejudice. *See Davenport*, 935 F.2d at 1239. This Court assumes, without deciding, that the first and third *Barker* factors weigh heavily against the government. This leaves a determination of whether the second *Barker* factor, the reason for the delay, weighs heavily against the government.

In *Davenport*, the Eleventh Circuit reached this very issue in a complex multi-defendant case. In that case, co-defendants similarly caused a twenty one month delay for a variety of reasons, including motions for continuances and other pretrial motions. *See id.* at 1239–40. Under those circumstances, the Eleventh Circuit stated that the reason for those delays weighed against the government,[17] but not heavily, because there was no showing of intentional or bad faith prosecutorial delay.[18] *See id.* The Eleventh Circuit then concluded that the defendant had not demonstrated actual prejudice and was not denied his Sixth Amendment right to a speedy trial. *See id.*

In this case, like *Davenport*, the delay is being caused by Al–Arian's co-defendants, and Al–Arian has not shown that this delay was intentionally caused or caused in bad faith by the government.[19] Therefore, the second *Barker* factor does not weigh heavily against the government, and Al–Arian must show actual prejudice to successfully assert that his constitutional right to a speedy trial has been violated.

Al–Arian has not offered any evidence or argument of actual prejudice caused by the continuance and the exclusion of time for pretrial motions in this case. Therefore, Al–Arian has failed to meet the *Bark-*

---

**17.** Under *Barker*, neutral reasons like the delay caused by co-defendants weigh against the government. 407 U.S. at 531, 92 S.Ct. 2182. Neutral reasons are, however, to weigh "less heavily against the government" than intentional prosecutorial delay. *Id.*

**18.** The Eleventh Circuit reached a similar determination in *Register* finding that the second

and third factors of the *Barker* test were not met when the government, the defendant, and the co-defendants caused a thirty eight month delay. *Register*, 182 F.3d at 827.

**19.** Moreover, significant amounts of the delay to date has been caused by Al–Arian.

*er* test and his Sixth Amendment right to a speedy trial has not been and is not violated by this Court's grant of his co-defendant's motion for continuance and the exclusion of the delay between February 20–June 5, 2003 from his speedy trial clock.[20]

## II. COMPELLING ATTORNEYS TO GAIN SECURITY CLEARANCE

At the status conference, co-counsel for Al–Arian contended that this Court would violate their constitutional rights to privacy if it required them to submit forms and obtain a security clearance as part of their representation of Al–Arian. As an initial matter, this Court would note that the government has indicated in nearly every hearing since this case began that a majority of the telephone recordings were classified. Moreover, the government, the magistrate judge presiding over this case, and even this Court have repeatedly told defense counsel that they should go ahead and apply for security clearances to prevent delay of this case. Al–Arian's counsel never raised an objection nor a concern about obtaining a security clearance.[21] Now three months after their appointment, for the first time, they raise this issue.

This Court does not dispute that counsel will disclose personal matters as a result of completing the security clearance packet and the subsequent investigation.[22] This Court does not take issue with counsel's assertion that they have a privacy interest in avoiding disclosure of personal matters. *See, e.g., Whalen v. Roe,* 429 U.S. 589, 599–600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); *United States v. Bin Laden,* 58 F.Supp.2d 113, 123 (S.D.N.Y.1999) (involving order compelling counsel to obtain security clearance).

The Eleventh Circuit and the former Fifth Circuit[23] have held, however, that the fact that a privacy interest is implicated does not end the inquiry. *See James v. City of Douglas,* 941 F.2d 1539, 1544 (11th Cir.1991); *Fadjo v. Coon,* 633 F.2d 1172, 1176 (5th Cir.1981); *Plante v. Gonzalez,* 575 F.2d 1119, 1134–36 (5th Cir.1978). Instead, these courts have held that the constitutional right to confidentiality is overcome if the government has a legitimate interest that outweighs the individual's privacy interest. *See James,* 941 F.2d at 1543–44. For example in *Plante,* the former Fifth Circuit held that state senators' significant privacy interest in their financial information was outweighed by the state's compelling interest in having good and honest government. 575 F.2d at 1134–36.

In this case, counsel's right to confidentiality is weighed against the United States' interest in protecting classified information. This Court cannot think of a more compelling or substantial interest that the United States possesses than pro-

---

**20.** This Court's decision is reinforced by the length of delays in the *Davenport* and *Register* cases where the Eleventh Circuit held that there was no violation of the defendants' constitutional rights to a speedy trial in similar circumstances. *See Register,* 182 F.3d at 827 (thirty eight month delay did not violate right to speedy trial); *Davenport,* 935 F.2d at 1239–40 (twenty one month delay did not violate right to a speedy trial).

**21.** Indeed, if co-counsel felt so strongly about obtaining a security clearance, one has to wonder why they would accept the court appointment to this case. It should have been obvious to counsel that a security clearance was likely to be required and they should have refused appointment.

**22.** This Court would note for the record that it is requiring its whole staff to undergo this procedure also.

**23.** In *Bonner v. City of Prichard,* the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. 661 F.2d 1206, 1209 (11th Cir.1981).

tection of classified information. The Supreme Court of the United States has stated that without adequate procedures to protect classified information the United States will suffer irreparable harm without the ability to seek redress. *See Snepp v. United States*, 444 U.S. 507, 512–15, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980) (per curiam). Requiring lawyers and their staffs to submit to a security clearance procedure to protect classified information outweighs an individuals privacy interest.[24] Most recently, the Southern District of New York similarly concluded, applying a higher standard (intermediate scrutiny), that the government's interest in protecting classified information substantially outweighed a defense counsels privacy interest.[25] *Bin Laden*, 58 F.Supp.2d at 123. Accordingly, this Court compels all defense counsel to submit security clearance packets to the appropriate authority within thirty (30) days.

It is therefore **ORDERED** and **ADJUDGED** that:

1. Defendant Ghassan Ballut's Motion for Extension of Time to File Motion to Dismiss and Memorandum of Law (Dkt.# 137) is **GRANTED in part and DENIED in part.** All Defendants have sixty (60) days from the date of the Second Amended Pretrial Discovery Order (Dkt. # 152 June 4, 2003) to move to dismiss the indictment, except that all Defendants may move to dismiss the indictment after that date on a factual challenge based on infor-

mation that was neither available nor could have been available in the exercise of reasonable diligence at the time that the original deadline passed.

2. Defendant Sameeh Hammoudeh's Motion for Adoption (Dkt.# 141) is **GRANTED** and the motion is adopted and resolved identically to Defendant Fariz's Motion for extension.

3. The government's Motion to Exclude Time From Speedy Trial Calculation and Memorandum of Law (Dkt.# 149) is **GRANTED.**

4. Defendant Hatim Naji Fariz's Motion for Severance and Continuance and Memorandum of Law in Support (Dkt.# 153) is **DENIED in part and GRANTED in part.** The Motion for Severance is denied for the reasons stated on the record and because of the granting of Fariz's Motion for Continuance.

5. Defendant Fariz's Unopposed Motion to Adopt Defendant Ballut's Motion for Extension of Time to File Motions to Dismiss and to Request a Bill of Particulars (Dkt.# 155) is **GRANTED** and the motion is adopted and resolved identically to Defendant Fariz's Motion for Extension.

6. Defendants Hammoudeh and Ballut's *ore tenus* Motion to Adopt Fariz's Motion for Severance and Continuance and Memorandum of Law in Support is **GRANTED** and the motion is adopted and resolved identically to Defendant Fariz's Motion for Severance and Continuance.

---

**24.** Further, such a requirement, requiring security clearance, is closely related to protection of classified information. This Court concludes that the United States' interest in protection of classified information would substantially outweigh an individual's privacy interest in the event that the Eleventh Circuit determines that intermediate scrutiny should apply in this situation.

**25.** In addition if the government desires to protect classified information, the govern-

ment shall file a motion for a protective order within thirty (30) days of the status conference. To diminish any concerns about confidentiality, Defendants' counsel should discuss with the government adding provisions to that order preventing unnecessary disclosure of their confidential personal information to the government. *See, e.g., Bin Laden*, 58 F.Supp.2d at 120–21; *United States v. Musa*, 833 F.Supp. 752, 756–57 (E.D.Mo.1993).

7.  Trial of this cause shall begin on January 10, 2005.

8.  Defendants' counsel shall submit packets for security clearance to the appropriate government agency within thirty (30) days from the date of the status conference (June 5, 2003).

9.  If it desires protection for classified information, the Government shall file for a protective order under CIPA within thirty (30) days from the date of the status conference.

10.  All parties shall provide to this Court within sixty (60) days written questions for a jury questionnaire to be used in this case.