**UNITED STATES of America,**

v.

**Soliman S. BIHEIRI, Defendant.**

**No. 1:04CR201.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 19, 2004.

See also 299 F.Supp.2d 590.

David H. Laufman, United States Attorney's Office, Alexandria, VA, for Plaintiffs.

Ashraf Wajih Nubani, Busch & Nubani PC, Annandale, Meredith Ann Taylor, Coburn & Schertler, Washington, DC, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This is the second prosecution of this defendant that has included allegations related to terrorist financing. In the first, defendant was convicted of naturalization fraud, but the government fell short in its effort to impose on defendant either a terrorism-related sentencing enhancement pursuant to U.S.S.G. § 3A1.4, or an upward departure pursuant to U.S.S.G. § 5K2.0. This second prosecution, which focuses on allegations of false statements to federal investigators and the knowing possession and use of a fraudulently procured passport, also seeks, for a second time, to impose a § 3A1.4 sentencing enhancement on defendant. In response, defendant's various pre-trial motions raise substantial issues of vindictive and selective prosecution, double jeopardy, and collateral estoppel. This Memorandum Opinion addresses these issues.

## I.

Defendant Soliman S. Biheiri is an Egyptian-born and Swiss-educated international financier who first came to the United States in 1985 on a six-month tourist visa. Thereafter, defendant made a series of false statements on various official forms and to government officials aimed at extending his stay in the United States and, ultimately, to obtain United States citizenship. During this period, defendant worked as an investment banker specializing in creating real estate investment opportunities for observant Muslims, whose religion forbids the charging or paying of interest. In this capacity, defendant established and operated BMI, Inc., a New Jersey-based holding company that directly, and through various subsidiary entities, invested in the development of housing projects.

In August 2003, defendant was charged in an indictment with (i) unlawful procurement of naturalization and (ii) swearing to false statements in his naturalization application.[1] He was convicted by a jury on both counts in October 2003, and as a result, stripped of his American citizenship. *United States v. Biheiri*, No. 1:03cr365 (E.D.Va. Dec. 18, 2003) (Order of Denaturalization). At sentencing, the government sought a sentencing enhancement pursuant to U.S.S.G. § 3A1.4, the provision applicable to offenses "involv[ing], or . . . intended to promote, a federal crime of terrorism." In support of this proposed enhancement, the government presented evidence and argued:

(1) that defendant had dealt in the property of terrorists in violation of the International Emergency Economic Powers Act ("IEEPA")[2]; that these dealings were "relevant conduct"[3] to the offenses of conviction; and

1. Defendant was also charged with having made materially false statements, but this charge was dismissed at trial on the government's motion. *United States v. Biheiri*, No. 1:03cr365 (E.D.Va. Oct. 9, 2003) (Order).

2. *50 U.S.C. § 1701 et seq. (2004).*

3. Under the federal Sentencing Guidelines, the sentencing ranges are not determined solely by a defendant's offense of conviction,

(a) that these dealings "involved, or [were] intended to promote, a federal crime of terrorism" under § 3A1.4; or

(b) that these dealings were "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct" under Application Note 4 of § 3A1.4; and

(2) that defendant made false statements to government agents when, in a June 2003 interview at Dulles Airport, he denied having social or business relationships with certain individuals associated with terrorism or the financing of terrorism; that these false statements were "relevant conduct" to the offense of conviction; and that these false statements served to obstruct "an investigation of a federal crime of terrorism" under Application Note 2 of § 3A1.4.

To prove defendant's IEEPA violations that were the basis of arguments (1)(a) and (1)(b) above, the government adduced evidence that defendant had served as an investment banker for Mousa Abu Marzook, a leader of a Middle Eastern terrorist organization known as HAMAS.[4] HAMAS and Marzook were each listed by the Department of State as a Specially Designated Terrorist (SDT) on January 25, 1995

and August 29, 1995, respectively.[5] The government's documentary evidence showed that, both before and after Marzook's designation as an SDT, BMI and its subsidiaries made substantial deposits to bank accounts held by Mostan International Corp., an entity incorporated by defendant with Marzook as its president.

To prove the false statements relied on as the basis for argument (2) above, the government adduced the testimony of a federal agent who had interviewed defendant at Dulles International Airport on June 15, 2003, to show that, at the end of a 4½ hour consensual interview, defendant denied having a social or business relationship with (a) Marzook, (b) Sami Al–Arian, a senior member of Palestinian Islamic Jihad, an SDT group,[6] or (c) Youssef Nada and Bank Al–Taqwa, both SDTs.

As an alternative to a § 3A1.4 sentencing enhancement, the government sought an upward departure pursuant to U.S.S.G. § 5K2.0, the provision applicable to "aggravating or mitigating circumstance[s] ... of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines ...." In support of this departure, the government advanced essentially the same matters urged in support of its § 3A1.4 claim. These matters, the government argued, were the qualifying "ag-

---

but may also take account of a defendant's "relevant conduct." See U.S.S.G. § 1B1.1, cmt. n. 1(H) (2004) (defining "offense" to encompass "relevant conduct"). "Relevant conduct," in turn, is defined as:

(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured or willfully caused by the defendant; and

(B) in the case of jointly undertaken criminal activity ... all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense. U.S.S.G. § 1B1.3(a)(1) (2004).

**4.** For a brief description of HAMAS, see *United States v. Biheiri*, 299 F.Supp.2d 590, 596–97 (E.D.Va.2004).

**5.** See Exec. Order 12947, 60 Fed.Reg. 5079 (Jan. 25, 1995); 60 Fed.Reg. 44932 (Aug. 29, 1995).

**6.** Though not an SDT, Al–Arian himself was indicted in February 2003 with conspiracy, providing material support to SDT's, and racketeering. *See United States v. Al–Arian*, 267 F.Supp.2d 1258 (M.D.Fla.2003).

gravating circumstances" required under § 5K2.0.

In the end, the government did not succeed in obtaining either the § 3A1.4 enhancement or the § 5K2.0 upward departure. *See United States v. Biheiri,* 299 F.Supp.2d 590 (E.D.Va.2004) (*"Biheiri I "*).[7] The record in *Biheiri I* reflects that the government ultimately abandoned and withdrew its § 3A1.4 arguments (1)(a) and (2) above, and pressed to conclusion only the § 3A1.4 argument described in (1)(b) above and the § 5K2.0 upward departure argument. *Id.* at 605–08, 610–11. With respect to these arguments, the *Biheiri I* record also reflects the following essential findings and conclusions pertinent here:

(1) that defendant had violated IEEPA by dealing in property of an SDT. *Id.* at 599–602;

(2) that the government had shown by a preponderance of the evidence that defendant had made a false statement to federal agents in violation of 18 U.S.C. § 1001(a), when, in the course of the June 15, 2003 interview at Dulles International Airport, he denied having a social or business relationship with Marzook. *Id.* at 601;

(3) that the government failed to show by a preponderance of the evidence that defendant made a false statement to federal agents in violation of 18 U.S.C. § 1001(a), when, in the course of that interview, he denied having social or business relationships with Al–Arian, Nada, or Bank Al–Taqwa. *Id.* at 601–02;

(4) that the government's § 3A1.4, Application Note 4 argument (1(b) above) failed because defendant's IEEPA violations were not "relevant conduct" to his naturalization fraud crimes, and, alternatively, that there was no evidence that defendant had intended to influence or affect government conduct by intimidation or coercion by engaging in financial transactions with terrorists. *Id.* at 605–08; and

(5) that the government's § 5K2.0 argument failed because defendant's IEEPA violations and false statement concerning his relationship with Marzook were irrelevant because they were not "circumstances or consequences" of his naturalization fraud crimes as required by § 5K2.0.[8] No similar conclusion was necessary with respect to the alleged false statements regarding Al–Arian, Nada, and Bank Al–Taqwa, because the government did not prove those alleged false statements.

In May 2004, defendant was again indicted, this time on (i) two counts of making false statements in violation of 18 U.S.C. § 1001(a), based on his June 15, 2003 statements regarding Marzook and Al–Arian, and (ii) one count of willfully using a fraudulently procured passport in violation of 18 U.S.C. § 1546(a) and 1185(b). In July 2004, by superseding indictment, the false statement counts were modified to include the charge that defendant's statements obstructed an investigation of a federal crime of terrorism.[9] These charges constitute the government's

---

7. For reasons not relevant here, the government did succeed in its argument that defendant deserved a two-level "aggravating role" enhancement under U.S.S.G. § 3B1.1(c). *See Biheiri I,* 299 F.Supp.2d at 610.

8. To impose an upward departure pursuant to § 5K2.0, the government must establish that the "circumstances or consequences of the offense of conviction" are "atypical." *United States v. Rybicki,* 96 F.3d 754 (4th Cir.1996).

In *Biheiri I,* therefore, the government sought, but failed, to prove that defendant's IEEPA violations and false statements were circumstances or consequences of his naturalization fraud crimes. *Biheiri I,* 299 F.Supp.2d at 611.

9. It appears that the impetus for including sentence-enhancing factors in the indictment itself was *Blakely v. Washington,* —— U.S.

second attempt to use defendant's denials of his terrorist ties to obtain a sentencing enhancement under § 3A1.4. This time, however, the government seeks to avoid the pitfalls of *Biheiri I* by focusing directly on the alleged false statements rather than incorporating them as "relevant conduct" at the sentencing stage.[10]

On August 16, 2004, defendant moved to dismiss the superseding indictment on grounds of vindictive and selective prosecution, double jeopardy, and collateral estoppel, each of which is separately addressed here.

## II.

■ The Constitution's command that the Executive Branch "take Care that the Laws be faithfully executed,"[11] confers broad prosecutorial discretion on that Branch; it is therefore, in general, left to the Executive Branch to determine whom to prosecute and for what offenses. *See United States v. Lindh,* 212 F.Supp.2d 541, 564 (E.D.Va.2002). And, importantly, a presumption of regularity attaches to the Executive Branch's prosecutorial decisions, so that "in the absence of clear evidence to the contrary, courts presume that [federal prosecutors] have properly discharged their official duties." *United States v. Armstrong,* 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (quoting

*United States v. Chemical Found., Inc.,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926)); *Lindh,* 212 F.Supp.2d at 564. Accordingly, the decision whether to prosecute a particular defendant on particular charges ordinarily rests entirely in the discretion of the Executive Branch. *See Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *Lindh,* 212 F.Supp.2d at 564.

■ Yet this broad prosecutorial discretion is neither limitless nor wholly unfettered. A narrowly-circumscribed but important exception to this broad prosecutorial discretion is the rule that the decision to prosecute a defendant may not be exercised vindictively, that is, that the decision to prosecute may not be made in retaliation or in vengeance for that defendant's exercise of his rights under the law. *See, e.g., United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982); *United States v. Wilson,* 262 F.3d 305, 314 (2001). Indeed, controlling authority states that "to punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and ... 'patently unconstitutional.'" *Bordenkircher,* 434 U.S. at 363, 98 S.Ct. 663 (quoting *Chaffin v. Stynchcombe,* 412 U.S. 17, 32–33 n. 20, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973)). Because it is frequently difficult to prove a

———, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which recently held unconstitutional the State of Washington's statutory sentencing guidelines. This decision, coupled with *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), has given rise to litigation and speculation that the federal Sentencing Guidelines are also unconstitutional, in whole or in part. More recently, however, the Fourth Circuit has rejected this claim, holding the federal Sentencing Guidelines constitutional and instructing district courts to continue to apply the Guidelines, but to consider also imposing an alternative non-Guidelines sentence as a hedge against a future Supreme Court decision invalidating the

Guidelines. *See United States v. Hammoud,* 381 F.3d 316 (4th Cir.2004); *see also United States v. Pineiro,* 377 F.3d 464 (5th Cir.2004); *but see United States v. Booker,* 375 F.3d 508 (7th Cir.2004).

10. Defendant was not charged with the IEEPA violations. It appears that by the time of *Biheiri I,* IEEPA's five-year statute of limitations had expired with respect to these violations. The record does not reflect the reasons the government did not timely prosecute these violations.

11. U.S. Const. art. II cl.3.

retaliatory motive directly, the law permits a defendant to establish prosecutorial vindictiveness by circumstantial as well as by direct evidence. When a defendant can demonstrate that the circumstances of his prosecution "pose a realistic likelihood of 'vindictiveness,'" a presumption of vindictiveness arises, and the burden shifts to the government to justify its conduct. *Wilson*, 262 F.3d at 314 (quoting *Blackledge v. Perry*, 417 U.S. 21, 27, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974)). The quintessential case warranting such a presumption arises where a prosecutor responds to a defendant's successful appeal by re-trying him on an additional charge, or a more serious charge, that could have been brought in the original prosecution. *See id.* at 319. In such a case, "the institutional bias . . . against the retrial of a decided question," coupled with the fact that the only changed circumstance is the defendant's successful appeal, warrants an inference of vindictiveness. *Wilson*, 262 F.3d at 318 (quoting *Goodwin*, 457 U.S. at 376, 102 S.Ct. 2485).

■ By the same token, however, there is no basis for either a presumption or a conclusion of prosecutorial vindictiveness, where, as here, the government merely seeks, in successive prosecutions to be sure, to hold defendant accountable for the full range of his criminal conduct. The record reflects that the government has brought this second prosecution not in retaliation for any successful appeal of *Biheiri I*,[12] but rather to hold defendant accountable for the full range of his criminal conduct. The government, recognizing that its failure in *Biheiri I* was in part attributable to the fact that defendant's alleged false statements were not "relevant conduct" for sentencing pur-

poses, seeks here to overcome that obstacle by prosecuting the false statements themselves as offense conduct, not as relevant conduct. Accordingly, this second prosecution is properly seen as part of a continuing and legitimate effort to punish defendant for the full range of his wrongdoing, not as punishment for defendant's success in *Biheiri I*.

Nor does the passport fraud count in this case lead to a different conclusion. While that count could conceivably have been brought in *Biheiri I*, it need not have been brought there, nor does its presence in this indictment give rise to a presumption of vindictiveness. Proof of the naturalization fraud offense in *Biheiri I* is a necessary predicate to the passport fraud offense in this case, hence the government's decision to prosecute the naturalization fraud and passport fraud charges sequentially rather than simultaneously is understandable. Accordingly, no presumption or conclusion of vindictiveness is warranted here.

This conclusion finds further support in a comparison of the instant facts with those cases in which a presumption of prosecutorial vindictiveness arose. For example, in *Blackledge v. Perry*, 417 U.S. 21, 28–29, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the government indicted a defendant with felony assault with intent to kill *after* he appealed a misdemeanor assault conviction based on the same conduct. And, in *United States v. Meyer*, 810 F.2d 1242, 1246–47 (D.C.Cir.1987), the government, in the course of prosecuting protesters for demonstrating without a permit, added an additional count of obstructing the sidewalk against any protestor who demanded to go to trial. These cases contrast sharply with this case.[13]

---

**12.** Notably, neither the government nor defendant appealed the decision in *Biheiri I*.

**13.** It is also true, as the government notes, that the prosecutors assigned in this case are different from those who appeared in *Biheiri I*. Yet, while this fact suggests that the line

In sum, nothing in the circumstances of *Biheiri I* or this case permits either a presumption or an inference of an illegitimate retaliatory motive.

### III.

■ Yet another important exception to the Executive Branch's broad prosecutorial discretion is the constitutionally-based principle that the decision to prosecute "not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *United States v. Armstrong,* 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (quoting *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)). Accordingly, courts recognize the defense of selective prosecution in circumstances where "the administration of a criminal law is 'directed so exclusively against a particular class of persons ... with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law." *Armstrong,* 517 U.S. at 464–65, 116 S.Ct. 1480 (quoting *Yick Wo v. Hopkins,* 118 U.S. 356, 373, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)). Like vindictive prosecution, selective prosecution is a constitutionally-based challenge to prosecutorial discretion, not a defense on the merits to the charges asserted. *Id.* at 463, 116 S.Ct. 1480.

Given the strong presumption that federal prosecutors have properly discharged their official duties, claims of selective prosecution are not easily established. *See Lindh,* 212 F.Supp.2d at 564. Instead, a defendant faces the "demanding" and "rigorous" burden of showing, by clear evidence, the existence of a prosecutorial policy with both a discriminatory effect and a discriminatory purpose. *United States v. Olvis,* 97 F.3d 739, 743 (4th Cir.1996); *Lindh,* 212 F.Supp.2d at 565.

■ This record discloses neither the proscribed purpose nor the necessary effect. All defendant adduces to meet his heavy burden of showing such a purpose and effect is his claim that "[i]n the so-called 'war against terrorism,' the government has unfairly and selectively targeted persons either of the Muslim religion or of Middle Eastern descent and prosecuted them for crimes that have not been charged against the general population." Yet significantly, defendant has failed to identify even a single non-Muslim or non-Middle Eastern individual who was not prosecuted despite having engaged in offense conduct similar to that for which defendant has been indicted. Because such a showing is an "absolute requirement," defendant's selective prosecution claim fails. *Armstrong,* 517 U.S. at 467, 116 S.Ct. 1480.

### IV.

Defendant next claims that the Double Jeopardy Clause bars this second prosecution. That Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V, cl. 2. Courts have interpreted this language to prohibit both successive punishment and successive prosecution for the same criminal offense. *See, e.g., United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); *North Carolina v. Pearce,* 395 U.S. 711, 733–35, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In both the multiple-punishment and multiple-prosecution contexts, courts

---

prosecutors here are not acting vindictively, it does not foreclose a finding of prosecutorial vindictiveness, for it is clear that a finding of vindictiveness "does not hinge on the continued involvement of a particular individual."

*Thigpen v. Roberts,* 468 U.S. 27, 31, 104 S.Ct. 2916, 82 L.Ed.2d 23 (1984). This is so because it is possible that the source of vindictiveness may be the line prosecutors' supervisors, or indeed the Department of Justice.

determine whether a defendant is being "put in jeopardy" for different offenses or the same offense by applying the "same-elements" test. *See, e.g., Brown v. Ohio,* 432 U.S. 161, 168–69, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). This test, also known as the *Blockburger* test, compares the elements of each offense for which a defendant has been punished or tried with the elements of offenses charged in a successive prosecution. *See Dixon,* 509 U.S. at 696, 113 S.Ct. 2849. When all of the elements of one offense overlap perfectly with some or all of the elements of another, the two offenses are "the same offence" and successive prosecution or punishment is barred. *Id.* (quoting U.S. CONST. amend V, cl. 2.).

■ Importantly, the Double Jeopardy Clause does not bar subsequent prosecution or punishment of criminal activity previously considered at sentencing for a separate crime. As the Supreme Court stated in *Witte v. United States,* 515 U.S. 389, 401, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted." *Witte* arose from the cocaine-conspiracy prosecution of a defendant who had previously pled guilty to, and been sentenced for, attempting to purchase marijuana. Witte had arranged with an undercover DEA agent in June 1990 to import large quantities of marijuana and cocaine from Mexico. *Id.* at 391–92, 115 S.Ct. 2199. Before being either arrested or indicted for that attempt, however, Witte sought to purchase one thousand pounds of marijuana from the same agent in January 1991. *Id.* at 392, 115 S.Ct. 2199. Indicted for the latter activity in March 1991, Witte ultimately pled guilty, and at sentencing, over the objections of both Witte and the

government, the sentencing court concluded that Witte's actions in 1990 and 1991 were part of the same conspiracy, and accordingly took account of the aggregate quantity of drugs that Witte had attempted to acquire in both years when calculating his sentence under the Sentencing Guidelines. *Id.* at 392–94, 115 S.Ct. 2199. Shortly after his sentencing, Witte was again indicted, this time for conspiring and attempting to import cocaine based on his activities in June 1990. *Id.* Witte then moved to dismiss the second indictment on double jeopardy grounds, arguing that because his attempted cocaine dealings had been factored into his earlier marijuana sentence, he had already been punished for those dealings. *Id.* at 394–95, 115 S.Ct. 2199. The Supreme Court disagreed, noting that given the different elements contained in the two charged offenses, the second indictment easily passed the *Blockburger* test. *Id.* at 396, 115 S.Ct. 2199. Moreover, the Supreme Court reasoned that the previous cases in which it had upheld recidivism statutes against double jeopardy challenges had established the principle that "use of evidence of related criminal conduct to enhance a defendant's sentence for a separate crime within the authorized statutory limits does not constitute punishment for that conduct within the meaning of the Double Jeopardy Clause." *Id.* at 397–99, 115 S.Ct. 2199. The Supreme Court then went on to observe that "by authorizing the consideration of offender-specific information at sentencing without the procedural protections attendant at a criminal trial, our cases necessarily imply that such consideration does not result in 'punishment' for such conduct." *Id.* at 400, 115 S.Ct. 2199.

■ In this case, defendant's double jeopardy argument is analogous to the argument rejected in *Witte,* namely that because defendant's alleged false statements

were considered at his sentencing for naturalization fraud in *Biheiri I*, the government's current attempt to prosecute him for those statements constitutes a second prosecution for the same criminal offense. This argument differs from that rejected in *Witte* only in that defendant here was not "punished" for the criminal conduct with which he is currently charged. Accordingly, this defendant must rely on the Double Jeopardy Clause's prohibition of successive prosecutions rather than, as in *Witte*, its prohibition of multiple punishments. In any event, this distinction is not material because the *Blockburger* test applies in either case. *See, e.g., Dixon,* 509 U.S. at 696, 113 S.Ct. 2849; *Brown,* 432 U.S. at 168–69, 97 S.Ct. 2221. Thus, defendant's Double Jeopardy Clause argument here fails for the same reasons that the analogous argument failed in *Witte*.

Seeking to avoid this result, defendant argues that *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), have changed the double jeopardy landscape such that *Witte* is no longer good law. Seizing on *Witte's* observation that the lower procedural safeguards attendant at sentencing hearings imply that a defendant is not "punished" for conduct considered at those hearings, defendant notes that under *Apprendi,* whenever conduct considered at sentencing will, if proven, increase the penalty for the offense of conviction beyond the prescribed statutory maximum, such conduct must be proven to a jury beyond a reasonable doubt. *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348.

By thus augmenting the procedural protections required to find sentencing-enhancing facts, defendant contends that *Apprendi* makes such facts "functionally equivalent to elements of a greater offense," and therefore part of the element-by-element *Blockburger* analysis. *Id.* at 494 n. 19, 120 S.Ct. 2348. Defendant further contends that under *Blakely,* the "statutory maximum" under a guidelines-sentencing regime is the upper limit permitted by the guidelines for any given set of facts. Therefore, defendant argues, double jeopardy should attach to any criminal conduct considered at sentencing that, if proven, increases a defendant's guidelines sentence.

Though creative, this argument is foreclosed by *United States v. Hammoud,* 381 F.3d 316 (4th Cir.2004), which squarely holds that under the federal Sentencing Guidelines, the "statutory maximum" for any given offense is not necessarily the upper limit permitted by the guidelines. Thus, under the federal Guidelines, sentencing factors do not have to be proven to a jury beyond a reasonable doubt, and are not equivalent to elements of an offense for *Blockburger* purposes. *See Hammoud,* 381 F.3d at 357–58 (Wilkinson, J., concurring). Pending further elaboration on the federal Sentencing Guidelines by the Supreme Court, therefore, it is inappropriate to conclude that *Apprendi* and *Blakely*—both of which were decided under the Sixth Amendment, not the Double Jeopardy Clause—have radically altered the significance of federal sentencing factors for double jeopardy purposes.[14]

**14.** Moreover, even assuming the Supreme Court were to extend *Blakely* and find the federal Sentencing Guidelines unconstitutional, that holding would almost certainly not affect *Biheiri I,* as any such rule, like the rule in *Apprendi,* would not be accorded retroactive effect. *See United States v. Sanders,* 247 F.3d 139, 146–48 (4th Cir.2001) (applying *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and concluding that *Apprendi* does not have retroactive effect); *see also McCoy v. United States,* 266 F.3d 1245, 1256–58 (11th Cir.2001); *United States v. Moss,* 252 F.3d 993 (8th Cir.2001); *Jones v. Smith,* 231 F.3d 1227 (9th Cir.2000).

In sum, defendant's double jeopardy defense fails because the elements of the offenses charged in this case do not overlap with the elements of the offenses charged in *Biheiri I*, and hence the *Blockburger* test is not met. While the Double Jeopardy Clause operates to preclude successive prosecutions or punishments, it does not foreclose the prosecution of conduct considered at a prior sentencing.

## V.

The final string to defendant's bow in opposing this second indictment is the important but less often asserted defense of collateral estoppel. First applied in civil litigation, collateral estoppel prevents duplicative litigation between the same parties by prohibiting them from relitigating an issue of fact once that issue has been determined by a valid and final judgment. *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In criminal law, however, the collateral estoppel defense derives from the Double Jeopardy Clause, and thus assumes a constitutional dimension that it lacks in the civil context. *See Ashe,* 397 U.S. at 445, 90 S.Ct. 1189; *United States v. Ruhbayan,* 325 F.3d 197, 201 (4th Cir.2003); *United States v. Nash,* 447 F.2d 1382, 1384–85 (4th Cir.1971). In operation, therefore, collateral estoppel expands upon double jeopardy protections accorded to defendants to bar "not only ... retrial for the same offense, but also ... relitigation of adjudicated issues whether they emerge in

trials for the same or distinct offenses." *Nash,* 447 F.2d at 1384.

[9, 10] Importantly, there are five requirements that must be met for the application of collateral estoppel. They are: (i) whether the issue in question is identical to the issue in a prior proceeding, (ii) whether the issue was actually determined in a prior proceeding, (iii) whether determination of the issue was a necessary part of the decision in the prior proceeding, (iv) whether the resulting judgment was final and valid, and (v) whether the party against whom estoppel is asserted had a full and fair opportunity to contest the issue in the prior proceeding. *See United States v. Fiel,* 35 F.3d 997, 1005 (4th Cir. 1994) (overturning the defendant's conspiracy conviction because the jury in a previous trial had, by acquitting the defendant on a different conspiracy charge, necessarily determined that defendant had not participated in that conspiracy); *see also Nash,* 447 F.2d at 1385 (overturning the defendant's perjury conviction because the jury in a previous trial had, by acquitting defendant on mail fraud charges, necessarily determined that the defendant's testimony was the truth). Equally important, factual findings at sentencing hearings may have preclusive effect provided that they are incorporated into a final judgment. *See United States v. Montes,* 976 F.2d 235, 239 (5th Cir.1992).[15]

Here, defendant contends that, given the outcome of *Biheiri I*, the government is collaterally estopped from assert-

---

**15.** In this regard, there is no basis in law or policy for the government's argument that sentencing findings should not have preclusive effect because sentencing hearings lack the dignity and procedural guarantees of a formal guilt-innocence proceeding. The truth is decisively to the contrary; sentencing proceedings under the federal Sentencing Guidelines, which may occasionally be as extensive as trials, have all the dignity of trials, particu-

larly where, as in *Biheiri I*, the consequences to the defendant of losing could be as much as ten years additional incarceration. And, while it is true that the government's burden of proof at sentencing is lower than the beyond-a-reasonable-doubt standard that governs at trial, this difference favors granting preclusive effect to sentencing issues decided in a defendant's favor.

ing either (i) that defendant's statement regarding his relationship with Sami Al–Arian was false, or (ii) that defendant, by making false statements, obstructed an investigation of a federal crime of terrorism. Principally at issue with respect to each of these contentions is whether the issues involved were actually and necessarily decided in *Biheiri I*.[16]

*Biheiri I* reflects a clear finding of fact that the government had not proven by a preponderance of the evidence that defendant had made a false statement to federal agents on June 15, 2003, when he denied having a business or social relationship or dealings with Sami Al–Arian. *Biheiri I*, 299 F.Supp.2d at 602. This finding was neither material nor necessary to the resolution of the government's § 3A1.4, Application Note 2 claim because the government abandoned this claim and did not press it to conclusion. Thus, there was no decision or judgment on this claim, and it follows that the finding was not part of a final judgment in that respect in *Biheiri I*.

Yet, this does not end the collateral estoppel analysis concerning the prior finding that the government had failed to prove a false statement relating to Al–Arian. While the government abandoned and withdrew its § 3A1.4, Application Note 2 claim, it pressed to unsuccessful conclusion its claim for a § 5K2.0 upward departure. And importantly, the government urged in support of this claim all of the arguments, including the alleged false statement concerning Al–Arian. Thus, the finding was necessary and material to the disposition of the government's § 5K2.0 claim and is incorporated into the *Biheiri I* judgment. It follows, therefore, that this finding is entitled to preclusive effect here and that Count 2 of the instant indictment must accordingly be dismissed.

The defendant's collateral estoppel claim with respect to whether the false statement obstructed a federal crime of terrorism stands on a different footing. The government withdrew this claim and did not press it to conclusion. Moreover, the government's § 5K2.0 claim did not require a finding that any false statement obstructed any investigation. Thus, no finding relating to obstructing a federal crime of terrorism investigation was necessarily determined in *Biheiri I,* nor was any such finding incorporated in any final judgment in that case. Collateral estoppel, therefore, does not operate in this regard.

Finally, it is necessary to address defendant's argument that the government's withdrawal and abandonment of a claim should have the same preclusive effect as is accorded to one pressed to conclusion. In support of this argument, defendant relies on an analogy to offenses charged in an indictment that are abandoned at the close of the government's case (at the Rule 29, Fed.R.Crim.P. stage). Such claims, defendant argues, are barred by the Double Jeopardy Clause.

The short answer to this argument is that the analogy is not apt; an indicted offense presented at trial and withdrawn at the end of the government's case is quite different from a sentencing claim initially advanced to a sentencing judge, but then withdrawn. *Witte* reflects this difference and teaches that there is no constitutional bar to the prosecution of a defendant for conduct considered in connection with a prior sentencing. *See Witte,* 515 U.S. at 406, 115 S.Ct. 2199.

## VI.

In summary, while defendant's arguments of vindictive and selective prosecu-

---

**16.** There is no dispute that the other *Fiel* factors are met. Specifically, the parties do not dispute the identity of the issues, the final-ity of *Biheiri I* (neither party appealed), and the fact that both parties had a full and fair opportunity to litigate the issues in *Biheiri I.*

tion and his Double Jeopardy Claim all fall short, he succeeds on his claim that the government is collaterally estopped from prosecuting defendant in this case for an alleged false statement about Al–Arian because the government's claim regarding that statement was actually and necessarily determined adversely to the government in *Biheiri I*.

An appropriate order has issued.